# LOUISIANA RAILWAY & NAVIGATION COMPANY v. BEHRMAN, MAYOR OF THE CITY OF NEW ORLEANS.

ERROR TO THE SUPREME COURT OF THE STATE OF LOUISIANA.

No. 49. Argued November 4, 5, 1914.—Decided November 30, 1914.

While the jurisdiction of this court under § 237, Judicial Code, may not attach where the state court gave no effect to the state enactment claimed to have impaired the obligation of a contract, where the State does give effect to later legislation which does impair the obligation of a contract, if one exists, this court has jurisdiction to, and must, determine for itself whether there is an existing contract, even though the state court may have put its decision upon the ground

that the contract was not made, was invalid, or had become inoperative.

In determining whether effect has been given to later legislation, this court is not limited to mere consideration of the language of the opinion of the state court.

This court has jurisdiction under § 237, Judicial Code, to determine whether there is a contractual obligation which plaintiff in error is entitled to enforce without its being impaired by the operation of subsequent legislation enacted by or under the authority of the State.

While courts should give them a fair and reasonable interpretation, public grants are not to be extended by implication beyond their clear intent.

As the ordinance on which the contract claimed to have been impaired was based, was intended to confer rights exclusively with reference to an existing plan of construction, and as that plan proved abortive because of legal obstacles to its fulfillment, no rights were conferred thereby, and a later ordinance on the same subject cannot be deemed invalid under the impairment of obligation clause of the Federal Constitution.

An ordinance of the City of New Orleans regarding construction of the Belt Railroad, *held* not unconstitutional because it impaired the obligation of a contract based on a former ordinance, as such contract was subject to a suspensive condition, and the event in which the obligation was to arise had not happened.

127 Louisiana, 775, affirmed.

THE facts, which involve the jurisdiction of this court under § 237, Judicial Code, and also the constitutionality under the impairment of obligation provision of the Federal Constitution of an ordinance of the City of New Orleans relating to the construction and operation of a belt railroad within the city, are stated in the opinion.

*Mr. R. E. Milling,* with whom *Mr. M. J. Foster* was on the brief, for plaintiff in error.

*Mr. I. D. Moore* for defendant in error.

MR. JUSTICE HUGHES delivered the opinion of the court.

The plaintiff in error seeks to review the judgment of the state court upon the ground that it denied a Federal right

asserted under the contract clause of the Constitution. Art. 1, § 10.

The suit was brought by the Mayor of the City of New Orleans, in his official capacity, to restrain the Louisiana Railway & Navigation Company from proceeding under a municipal ordinance—No. 1997, New Council Series, dated September 4, 1903—to construct and operate tracks over a public belt railroad reservation, and from operating cars, etc., over public belt railroad tracks, and to have the ordinance, so far as it granted to that Company such privileges of construction and operation, declared null and void. The facts, so far as it is necessary to state them, are these:

The authorities of the City of New Orleans devised the plan of establishing a public belt railroad along the river front. On March 1, 1899, the City adopted an ordinance (No. 15,080, C. S.) under which, in consideration of certain concessions, the Illinois Central Railroad Company built about two miles of the projected system, that is, from the upper limit of the City to the upper boundary of Audubon Park. This was followed by ordinance No. 147, N. C. S., adopted August 7, 1900, which created a Belt Railroad Board, composed of the Mayor and certain city officials, to construct, control and operate the belt railroad for the benefit of the City; and on August 12, 1902, the Board of Commissioners of the Port of New Orleans, called the 'Dock Board,'—a body exercising state authority over a part of the area to be traversed by the proposed road—approved the dedication for the purpose stated. This approval was to remain in force only so long as the belt railroad was 'operated and controlled by a public commission' in accordance with the provisions of ordinance No. 147.

On February 10, 1903, a further ordinance was adopted —No. 1615, N. C. S.—which, among other things, granted to the New Orleans & San Francisco Railroad Company

a right of way over the belt line and reservation from the upper limit of the City to Henderson Street. The condition was that the company, at its own expense, should construct and dedicate to perpetual public use the tracks as projected from the end of the line already built, on the upper side of Audubon Park, to Henderson Street (a distance of about five miles), the construction to be completed before July 1, 1904. Other provisions looked to still further construction through contributions from other railroads. The validity of this ordinance was at once challenged in a suit brought by the Mayor, on behalf of the City, which resulted in favor of the Railroad Company. *Capdevielle, Mayor,* v. *New Orleans R. R. Co.,* 110 Louisiana, 904. The terms of the ordinance, however, did not conform to the conditions upon which the Dock Board had consented to the building of the belt road, and, in a suit brought by that Board against the Railroad Company, the carrying out of ordinance No. 1615 was restrained so far as it authorized the construction of the railroad upon the property subject to the Board's jurisdiction. *Board of Commissioners* v. *New Orleans & San Francisco R. R. Co.,* 112 Louisiana, 1011. Following this decision, it appears that the New Orleans & San Francisco Railroad Company abandoned the building of the belt line contemplated by the ordinance; no part of it was constructed thereunder.

On September 4, 1903, while the suit of the Dock Board was pending, and after the final decision in the Capdevielle suit, the City adopted ordinance No. 1997, N. C. S.,—the ordinance here in question (127 Louisiana, pp. 784–792). Without passing now upon points in controversy, it may be said that this ordinance, reciting that under ordinance No. 1615 there had already been granted to the New Orleans & San Francisco Railroad Company the right to construct the belt line over the reservation from the place at which the rails then terminated to Henderson Street,

granted to the Louisiana Railway & Navigation Company—the plaintiff in error—a right of way over 'the double track-belt line and reservation' to that point, upon stated terms and conditions, among which may be noted the following: That when the plaintiff in error had operated its equipment over the described belt tracks for thirty days, it should pay to the City the sum of $50,000; that in case the New Orleans & San Francisco Railroad Company failed 'without legal excuse' to build the described line to Henderson Street, as provided in ordinance No. 1615, the plaintiff in error should build that line in place of the first-mentioned company—this construction to be in lieu of the payment of $50,000 and the belt tracks so built, as soon as completed to Henderson Street, to be 'turned over to the immediate ownership of the City of New Orleans' and to be under 'the control and management of the Public Belt authority'; and, further, that in case the New Orleans & San Francisco Railroad Company should from any cause complete only a portion of the described tracks, the plaintiff in error should have the right to use so much of the described belt line as had been built, on payment of a proportionate part of the specified sum. This ordinance the plaintiff in error formally accepted on September 17, 1903.

The suit brought by the Dock Board against the New Orleans & San Francisco Railroad Company was decided by the Supreme Court of the State in May, 1904, and, in the October following, the City adopted ordinance No. 2683, N. C. S., which made comprehensive provision for municipal construction and operation of the belt line system. All conflicting ordinances were repealed, and it cannot be doubted that this ordinance, if enforced, would make it impossible for the plaintiff in error to exercise the rights it might otherwise have under ordinance No. 1997. The belt board was reorganized by the establishment of a new Public Belt Railroad Commission, com-

posed of the Mayor and sixteen 'citizen tax payers,' to whom was confided the necessary administrative authority for carrying out the municipal scheme. This ordinance received the approval of the Dock Board on stated conditions, and, on July 1, 1905, the new undertaking was formally inaugurated. On November 10, 1905, the plaintiff in error deposited with a trust company, which was one of the fiscal agents of the City, $50,000 in securities in alleged compliance with its contract under ordinance No. 1997. The City, however, went on with its own plan, arranging for bank credits to enable it to carry on the work under ordinance No. 2683, and when, in May, 1906, the plaintiff in error attempted to begin construction under the earlier ordinance it was stopped by the City authorities. Soon after, the present suit was instituted.

The petition of the Mayor, alleging upon various grounds the invalidity of ordinance No. 1997, also averred the adoption of ordinance No. 2683, the irrevocable dedication thereby for the reservation of the public belt railroad, and the undertaking by the City under that ordinance of the work of construction. The plaintiff in error, in its answer, set up the unconstitutionality of the later ordinance as one impairing contractual obligations. At the beginning of the suit a preliminary injunction was granted, in accordance with the City's prayer, and the City proceeded with the construction of the public belt railroad, which has since been put in operation. In the court of first instance, judgment went 'in favor of the plaintiff, Martin Behrman, in his official capacity of Mayor of the City of New Orleans, and as ex-officio president of the Public Belt Railroad Commission of the City,' declaring ordinance No. 1997, so far as it purported to grant the privileges in dispute, to be 'illegal, void and of no effect' and making the injunction permanent. This judgment was affirmed by the Supreme Court of the State upon the ground that the contract was 'subject to a suspensive

condition, and that this condition had become impossible of realization, and the contract had, in consequence, fallen through, when plaintiff made its attempt to begin work and the injunction was taken.' 127 Louisiana, 775, 795, 796.

The defendant in error moves to dismiss, invoking the established rule that, where the state court gives no effect to the subsequent enactment, the jurisdiction of this court does not attach. *Knox* v. *Exchange Bank*, 12 Wall. 379, 383; *Lehigh Water Co.* v. *Easton*, 121 U. S. 388, 392; *New Orleans Water Works* v. *Louisiana Sugar Co.*, 125 U. S. 18, 38, 39; *Central Land Co.* v. *Laidley*, 159 U. S. 103, 111; *Bacon* v. *Texas*, 163 U. S. 207, 216, 219; *Fisher* v. *New Orleans*, 218 U. S. 438, 440; *Missouri & Kansas Interurban Rwy.* v. *Olathe*, 222 U. S. 187, 190; *Cross Lake Club* v. *Louisiana*, 224 U. S. 632, 639. We are of the opinion that the present case is not within this rule. It is equally well settled that, where the state court does give effect to later legislation which operates to impair the obligation of a contract if one exists, this court is not deprived of jurisdiction because the state court has put its decision upon the ground that the contract was not made, or that it was invalid, or that it has become inoperative. In such a case, this court must determine for itself whether there is an existing contract. Otherwise, although it was the aim of the suit and the effect of the judgment to give vitality and operation to the subsequent law, and this court might be of the opinion that there was a valid contract which thereby would be impaired, it would be powerless to enforce the constitutional guarantee. *Jefferson Branch Bank* v. *Skelly*, 1 Black, 436, 442, 443; *Bridge Proprietors* v. *Hoboken Co.*, 1 Wall. 116, 144, 145; *University* v. *People*, 99 U. S. 309, 321; *Mobile & Ohio Railroad* v. *Tennessee*, 153 U. S. 486, 492; *Douglas* v. *Kentucky*, 168 U. S. 488, 502; *Atlantic Coast Line* v. *Goldsboro*, 232 U. S. 548, 556; *Russell* v. *Sebastian*, 233

U. S. 195, 202. And, in determining whether effect has been given to the later statute, this court is not limited to the mere consideration of the language of the opinion of the state court. *McCullough* v. *Virginia,* 172 U. S. 102, 116; *Houston & Texas Central Railroad* v. *Texas,* 177 U. S. 66, 76, 77; *Hubert* v. *New Orleans,* 215 U. S. 170, 175; *Carondelet Canal Co.* v. *Louisiana,* 233 U. S, 362, 376. In the present case, it is apparent that the whole object of the suit was to establish the right of the City to carry out the subsequent ordinance, which conflicted with and repealed the earlier ordinance so far as it might be construed to give to the plaintiff in error the particular privileges therein described. It was, as appears from the petition itself, to accomplish the purpose of the later enactment, and the building of the belt line thereunder, that the City asked the aid of the court's injunction in this suit; and it was through this protection that the municipal scheme of construction under the later ordinance was actually carried out. The final judgment completed and made permanent this protection, with respect to operation as well as construction, as against the claim of contract right. It must follow that this court has jurisdiction to determine whether that claim is well-founded, that is, whether there is a contractual obligation which the plaintiff in error is entitled to enforce without its being impaired by the operation of the subsequent provision having, by virtue of state authority, the force of state law.

It is the contention of the plaintiff in error that although the proposed belt road to Henderson Street was not built by the New Orleans & San Francisco Railroad Company, and although it be assumed that the failure of that company to build was legally excusable and hence that the obligation of the plaintiff in error to build in its stead did not arise, still there was an effective grant under ordinance No. 1997 and the plaintiff in error is entitled to

the use of the belt in the manner therein described upon the payment of $50,000.

We agree with the state court that this is not a proper interpretation of the ordinance.[1]  Provision had already

---

[1] "This ordinance, so far as it is material with respect to this question, is as follows:

"SECTION 3. Be it further ordained, etc., That, whereas, under Ordinance No. 1615, N. C. S., the New Orleans & San Francisco Railroad Company, its successors or assigns, have been granted the right to construct, at their own cost and expense, the double track Belt line over the Belt reservation on the river front, from the present end of the Public Belt on the upper side of Audubon Park to Henderson Street, and under said ordinance the Company dedicates said tracks to perpetual public use, therefore, under the belt provisions of said Ordinance No. 1615, N. C. S., 'and with the limitations therein which recognize and preserve the present and future rights of the City of New Orleans over the projected Public Belt Railroad,' the Louisiana Railway & Navigation Company is hereby granted a right of way over the double track Belt line and reservation on the river front of the City of New Orleans, from the upper limits of the City of New Orleans to Henderson Street, upon the following terms and conditions:

"(a) That, when said Louisiana Railway & Navigation Company shall have operated its engines, trains and cars over said Belt tracks, as provided in this ordinance, for a period of thirty days, the said Company shall pay to the City of New Orleans the sum of Fifty Thousand Dollars ($50,000), . . . and when said Company shall be ready to begin to operate its engines, trains and cars as above provided, the said Company shall deliver to the Fiscal Agent of the City of New Orleans, bonds or other securities, satisfactory to said Fiscal Agent, of the value of fifty thousand dollars, the same to be held in escrow as security for compliance by said Company with the foregoing obligation, and to be returned to said Company when said Company shall have operated its engines, trains and cars over said Belt tracks, as provided in this ordinance, for a period of thirty days, and shall have paid said sum of fifty thousand dollars to said Fiscal Agent. . . .

"(b) That in consideration of the payment of the above sum, the Louisiana Railway & Navigation Company shall have the right to operate its own locomotives, cars and equipment over the said Public Belt from the upper city limits to Henderson Street. . . .

"(c) That in the event of the New Orleans & San Francisco Railroad Company, its successors or assigns, failing, without legal excuse, to

been made for construction to the designated point by the
New Orleans & San Francisco Railroad Company.  Or-,
dinance No. 1997 prefaced its grant by a recital of the(
right of construction which had been given to that com-

build said Belt tracks from the upper side of Audubon Park to Hender-
son Street, on or before July 1, 1904, the Louisiana Railway & Naviga-
tion Company shall build the same from the upper side of Audubon
Park to Henderson Street, under the terms and conditions of Para-·
graph 10 of Section 2 of Ordinance No. 1615, N. C. S.; and, in case
said Louisiana Railway & Navigation Company shall build said tracks,
it is hereby granted the right and privilege to operate its trains, cars
and traffic over said tracks under all the provisions and terms of said
Paragraph 10 of Section 2 of Ordinance No. 1615, N. C. S., said Loui-
siana Railway & Navigation Company assuming the obligation of the
New Orleans & San Francisco Railroad Company under said paragraph
of said ordinance, and being hereby granted all the rights and privi-
leges of said New Orleans & San Francisco Railroad Company, its
successors or assigns, under said Paragraph 10 of Section 2 of said
Ordinance, except as hereinafter provided, such construction of said
tracks from the upper side of Audubon Park to Henderson Street to
be in lieu of the payment of $50,000, referred to in Paragraph (a) of
this section; provided, that said Louisiana Railway & Navigation
Company shall complete the said tracks to Henderson Street within
one year from the time the City shall furnish the clear and undisputed
right of way, it being always understood that said Louisiana Railway
& Navigation Company assumes all the obligations of the New Orleans
& San Francisco Railroad Company under Paragraph 10 of Section 2
of said Ordinance No. 1615, N. C. S.; and provided that, as soon as
said Belt tracks shall be completed to Henderson Street, the same shall
be turned over to the immediate ownership of the City of New Orleans
and to be under the control and management of the Public Belt au-
thority; and provided, further, that said Louisiana Railway & Naviga-
tion Company shall, on July 1, 1904, deposit with the Fiscal Agent of
the City of New Orleans, bonds or other securities satisfactory to said
Fiscal Agent, of the value of fifty thousand dollars, the same to be
held in escrow as security for compliance by said Company with the
foregoing obligation and to be returned to said Company when said
Company shall have built and completed said Belt tracks from the
upper side of Audubon Park to Henderson Street; and provided,
further, that in case said Company shall be prevented from building
said Belt tracks, or any portion of the same, on account of the City

pany and it was expressly stated that the grant to the plaintiff in error was made 'under the belt provisions of said ordinance No. 1615.' It had been provided in the last-mentioned ordinance that the public authorities might give to other railroad companies the right to use the road thus to be constructed, on their making contributions which should go into a special fund for the further extension of the belt line system. It is manifest that the intent was to give to the plaintiff in error the described right to use the tracks thus to be laid. But it was also contem-

not furnishing the right of way under the terms of Ordinance No. 1615, N. C. S., or by causes beyond its control, then the securities deposited shall be returned to it by said Fiscal Agent. . . .

"(d) That in the event the New Orleans & San Francisco Railroad Company, its successors and assigns, shall, from any cause, complete only a portion of the tracks from the upper side of Audubon Park to Henderson Street, the Louisiana Railway & Navigation Company, its successors and assigns, shall have the right to operate its own locomotives, cars and equipment over such portion of the tracks as is already built, and as may be built by the New Orleans & San Francisco Railroad Company, its successors and assigns, and for such privilege shall pay to the City of New Orleans such proportion of the sum provided in Clause (a) of this paragraph as the tracks so constructed and used by said Louisiana Railway & Navigation Company bear to the whole length of the tracks from upper city limits to Henderson Street.

*     *     *     *     *     *     *     *

"(f) That all controversies between the Louisiana Railway & Navigation Company on the one side, and the Public Belt authority, or any other Company or Companies to which the City or her Public Belt authority may grant the use of said tracks and appurtenances on the other side, relative to the use of said tracks and appurtenances or the cost of construction or maintenance thereof, or the rules and regulations relative to the movement and handling of cars, trains and traffic thereon and thereover shall be submitted to the arbitration of three disinterested persons, one to be selected by said Louisiana Railway & Navigation Company, the second by the Public Belt authority, or such other Company or Companies, as the case may be, and the third by the two thus chosen; and the decision of this tribunal, or any two of them, shall have the effect of an amicable composition. . . ."

plated that the New Orleans & San Francisco Railroad Company might fail to build and that this failure might be 'without legal excuse.' In that event, it was agreed that the plaintiff in error should step into the place of the other company and assume the burden of construction 'under the terms and conditions' of ordinance No. 1615, such construction to take the place of the pecuniary consideration for the use of the tracks. It was further apparent that the fulfillment of the plan of ordinance No. 1615 might be legally impossible and hence that the failure of the New Orleans & San Francisco Railroad Company might be legally excused. In this event, the plaintiff in error did not undertake to build and no right of construction was given to it. We cannot imply such a right. While we are to give to public grants a fair and reasonable interpretation (*United States* v. *Denver &c. Rwy. Co.,* 150 U. S. 1, 14; *Russell* v. *Sebastian,* 233 U. S. 195, 205), they are not to be extended by implication beyond their clear intent. The right of construction was given to the plaintiff in error in a particular contingency, and not otherwise; and the explicit provision for construction negatives an intention to bind the City to permit it in a case not specified. There was abundant reason for both expression and omission. The suit of the Dock Board was pending and whether the New Orleans & San Francisco Railroad Company would be able to build, as provided in ordinance No. 1615, was undecided. If that Company did build, the City was prepared to give, and, in that event did give, to the plaintiff in error the right of way upon the agreed payment; and if that Company failed to build 'without legal excuse' the City was ready to provide, and in that event did provide, that the plaintiff in error should build in its stead. But if there were legal excuse for a failure of the New Orleans & San Francisco Railroad Company to build, it was plainly desirable that neither party should be bound. In that case, as the terms

of the ordinance show, the plaintiff in error was unwilling
to assume the burden of construction, and the City by not
binding itself in that contingency preserved its freedom to
deal as it might seem best with the exigency that would
thus arise.   Ordinance No. 1997 did not obligate the City
to build the belt road or any part of it; it did not bind the
City to cause the road to be built by others.   As we read
the ordinance, it was intended to confer rights exclusively
with reference to an existing plan of construction, and if
that plan proved abortive, because of legal obstacles to its
fulfillment, no right was conferred upon the plaintiff in
error.

It is urged that the provisions of Ordinance No. 1997
[§.3, par. (c)] that the belt tracks to be constructed by
the plaintiff in error, as soon as they were completed
to Henderson Street, should be turned over to the 'im-
mediate ownership of the city' and should be under the
'control and management' of the public belt authority,
obviated the objection raised by the Dock Board with
respect to Ordinance No. 1615.   But an examination of
other provisions of the ordinance shows that this 'control
and management' was intended to be subject to certain
limitations.   Thus, it was provided in paragraph (f) that
all controversies between the plaintiff in error and the
public belt authority, or any other company or companies
to which the use of the tracks might be granted, relating
to the movement and handling of cars, trains and traffic
thereon, should be submitted to three arbitrators, one to
be selected by the plaintiff in error, the second by the
public belt authority, or by such other company or com-
panies, as the case might be, and the third by the two thus
chosen, and that the decision of any two of these arbitra-
tors was to have the effect of an 'amicable composition.'
We find no reason to doubt the correctness of the conclu-
sion that the conditions, subject to which the Dock
Board approved the dedication for belt road purposes of

the portion of the proposed route under its jurisdiction, would have been violated under the plan of Ordinance No. 1997 as well as under that of Ordinance No. 1615. And, further, it is clear that the proviso in paragraph (c) which related to tracks to be constructed by the plaintiff in error, did not change the event in which alone the plaintiff in error was entitled to construct them, and this was in case the New Orleans & San Francisco Railroad Company should fail to build 'without legal excuse.'

Thus far we have assumed that the New Orleans & San Francisco Railroad Company was legally excused from building. But it is insisted by the plaintiff in error that this is not the case. That is, it is said that the grant of the right to construct was divisible and that, so far as the City was competent to provide for such construction, the New Orleans & San Francisco Railroad Company was bound to build the belt road and, therefore, that its failure to build to this extent was 'without legal excuse' within the meaning of paragraph (c). But Ordinance No. 1615 negatives this view. It explicitly provided for construction 'from the end of the rails on the upper side of Audubon Park to Henderson Street,' and that the city should furnish 'a clear legal right of way for the construction of said tracks.' We think that there is no basis whatever for the contention that the New Orleans & San Francisco Railroad Company was bound to construct a part of the belt road specified if, by reason of the successful opposition of the Dock Board, it was without power to build the remainder. And when the Dock Board prevailed in its suit, that Company was entitled to abandon, as it did abandon, the undertaking. This was the event which was carefully excluded by Ordinance No. 1997 in defining the contingency in which the plaintiff in error should build. The provision in paragraph (c) for the return of the securities, which were to be deposited by the plaintiff in error as security for the performance of its obligation, in case

it should be prevented 'from building said belt tracks or any portion of the same on account of the city not furnishing the right of way,' or 'by causes beyond its control,' tends to support, rather than to oppose, the view that the undertaking was regarded as an entirety; for all the securities were to be returned although the prevention related to a portion of the route only. We are also referred to the provision [§ 3, par. (d)] that in the event that the New Orleans & San Francisco Railroad Company should, from any cause, complete 'only a portion of the tracks' described, the plaintiff in error should have the right 'to operate its own locomotives, cars,' etc. 'over such portion of the tracks' as had already been built, and as might be built by the first-mentioned Company, for a proportionate part of the agreed payment. This clause, in view of the existing situation of the parties, was held by the state court to have reference to a contingency in which, the opposition of the Dock Board not having been successful, the Railroad Company had proceeded with its undertaking and, having built a part of the tracks, had failed to complete them; and this construction is in harmony with the other provisions of the ordinance. But, in fact, the event described in paragraph (d) did not happen, as no part of the road was built; and this clause in no way aids the contention that the New Orleans & San Francisco Railroad Company was under legal obligation to undertake a partial construction if it became legally impossible to carry out its undertaking as a whole.

We conclude that the contract upon which the plaintiff in error relies was subject, in any aspect, to a suspensive condition (Civil Code, La., Art. 2021), that the event in which the obligation was to arise did not happen, and hence that the subsequent enactment was not open to the objection raised.

*Judgment affirmed.*