## LONG SAULT DEVELOPMENT COMPANY *v.* CALL (AS SUCCESSOR OF KENNEDY), AS TREASURER OF THE STATE OF NEW YORK.

ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

No. 49.  Argued April 14, 17, 1916; restored to docket for reargument June 12, 1916; reargued October 31, 1916.—Decided December 11, 1916.

When a claim of contractual rights under a state statute is denied by a state court purely upon the ground that the attempted grant was in conflict with the state constitution and therefore void *ab initio*, the "contract clause" of the Federal Constitution is not violated and this court may not review the decision.

In determining whether such decision was influenced by legislation subsequent to the alleged contract, this court will give considerate attention to the state court's decision, presuming an intention on the part of such court to obey the Constitution and laws of the United States; it will not, however, confine itself to the language of the opinion, but will examine the decision in its scope and substance, and decide for itself whether subsequent legislation was given effect in arriving at the result.

The decision of the court below, holding void an act of the legislature of New York (Laws of 1907, c. 355) which purported to grant rights in the Saint Lawrence River, was arrived at independently of the later repealing act and accompanying legislation found in Laws of 1913, chaps. 452 and 453.

Writ of error to review 212 N. Y. 1, dismissed.

THE case is stated in the opinion.

*Mr. Henry W. Taft*, with whom *Mr. Francis Sims Mc-Grath* was on the briefs, for plaintiff in error.

*Mr. Merton E. Lewis*, with whom *Mr. E. E. Woodbury*, Attorney General of the State of New York, and *Mr. C. T. Dawes* were on the briefs, for defendant in error.

MR. JUSTICE CLARKE delivered the opinion of the court.

This proceeding was commenced in the Supreme Court of New York by the Long Sault Development Company, hereinafter called the plaintiff, for the purpose of testing the constitutionality of an act of the legislature of that State, passed in 1907, to incorporate the plaintiff and to grant to it important rights in the bed of, and with respect to the use of the waters of, the St. Lawrence River. (Laws of 1907, c. 355.)

The case is now in this court on the claim that this Act of 1907 is a valid law and that the property rights, springing from the grants therein and the acceptance of them by the plaintiff, were impaired by a later act, passed in 1913, purporting to repeal the Act of 1907, and by the effect given to this later act by the decision of the Court of Appeals, rendered in June, 1914.

The title of the Act of 1907 indicates the comprehensive character of the grants which the legislature attempted to make by it. It reads as follows: "An Act to incorporate the Long Sault development company, and to authorize said company to construct and maintain dams, canals, power-houses and locks at or near Long Sault island, for the purpose of improving the navigation of the St. Lawrence river and developing power from the waters thereof, and to construct and maintain a bridge, and carry on the manufacture of commodities."

The act proceeds, first, to incorporate the Long Sault Development Company, giving it perpetual corporate

existence, and then in terms to authorize it: to construct, maintain and operate dams, canals, reservoirs, and the appurtenances necessary or useful for the purpose of developing waterpower and electrical energy, at such point or points adjacent to the south shore of the St. Lawrence River, and in and upon the river bed near Long Sault Island or Barnhart's Island as may be selected by the company; to erect and maintain powerhouses and electrical transmission appliances; and to construct a bridge or bridges across the river, in connection with the dam authorized, and to charge tolls for passage thereon.

These important rights are declared to be granted upon various specified conditions, the most important of which is "that the rights hereby granted shall never be so used as to impair or obstruct the navigation of the Saint Lawrence river, but, on the contrary, that such navigation shall be preserved *in as good condition as, if not better than, the same is at present,* regard being always had to the amount of the natural flow of water in said river as affecting its navigability from time to time."

The act further provides that, after the Congress of the United States shall authorize the construction of the proposed dams, locks and canals, and after the payment of certain sums of money into the State Treasury then the commissioners of the land office shall, upon application of said corporation, *"grant unto it the title and interest of the people of the state in and to lands under the waters of the Saint Lawrence river to be covered or occupied by said works and locks and power-houses."* The payments to be made, after the year 1911, shall be not less than $25,000 for each year. The petition alleges that the river at Long Sault Rapids is now practically unnavigable being navigated only by light draft passenger vessels down stream during the summer tourist season and that all other traffic up and down the river passes around the rapids by way of the Cornwall Canal on the Canadian side of the river,

The plaintiff was duly organized as a corporation and expended a large sum of money in preparing to utilize the grants of the act.

By an act which became a law on the eighth day of May, 1913, the legislature of the State in terms repealed this Act of 1907, under which the plaintiff in error is claiming.

Almost three months before this repealing act was passed this suit was commenced by the filing of a petition in the Supreme Court of New York, praying for a writ of mandamus, to be directed to the Treasurer of that State, requiring him to receive as a payment into the Treasury of the State the sum of $25,000, as the sum due and payable on February 1st, 1913, for the year 1912, under the provisions of the Act of 1907, which sum had theretofore been tendered to the Treasurer and had been by him refused, for the reason, it is alleged, that he had been advised by the Attorney General of the State that said act was unconstitutional and void. The application of the petitioner for a writ of mandamus was denied by the Supreme Court and this decision was affirmed by the Appellate Division and by the Court of Appeals which ordered the record in the case remitted to the Supreme Court, to be proceeded upon according to law.

Up to this time there is nothing in the record before us to indicate that any question was presented to the state courts, excepting the single one as to whether or not the Act of 1907 was valid under the constitution of the State of New York.

More than a month later, on the fourteenth day of July, 1914, the Court of Appeals, on motion of the plaintiff, requested the Supreme Court to return the remittitur to the Court of Appeals, which court then amended the same by incorporating therein the statement that "Upon the argument of the appeal in this cause before the Court of Appeals" there was submitted a brief, containing five

specified points. Of these in "Point III" alone counsel for the plaintiff for the first time, and then only by way of argument, attempt to present a federal question by claiming that if the repealing act is to be regarded as an attempted condemnation of the special franchises claimed by the plaintiff it "would be unconstitutional in that such franchises were not taken by the State for public use," in violation of the Fourteenth Amendment to the Constitution of the United States.

It is significant to note that the Court of Appeals, in its decision, rendered before the remittitur was thus amended, did not treat or regard the repealing act as "an attempted condemnation of the special franchises claimed by the plaintiff," nor did it afterwards so treat it.

Upon the record thus described the plaintiff in error comes into this court, claiming that the act of the legislature of the State of New York of 1907 is a valid, constitutional law, and that, it having been accepted and acted upon by the plaintiff, contract and other property rights resulted which, under the decision of the Court of Appeals, have been impaired or taken away by the repealing Act of 1913, in violation of the Constitution of the United States and of the Fourteenth Amendment thereto, and it therefore prays for a reversal of the judgment of the Supreme Court, entered pursuant to the decision of the Court of Appeals.

The defendant in error meets this claim of the plaintiff by a denial of the jurisdiction of this court, for the claimed reason that the Court of Appeals reached the conclusion that the Act of 1907 was unconstitutional and void without reference to, and without giving any effect to, the subsequent repealing statute.

The grants of the Act of 1907 are such that, if it was a valid law, upon their being accepted, they constituted property or contract rights, of which the plaintiff could not be deprived, and which could not be impaired, by

subsequent legislation, and, therefore, the denial by the defendant in error of the jurisdiction of this court renders it necessary for us to determine whether the Court of Appeals, in its decision, gave any effect to the repealing act. If it did not give effect to that act, either expressly or by implication, this court is without jurisdiction to review its decision, for the reason that the provisions of the Constitution of the United States for the protection of contract rights are directed only against the impairment of them by constitutions or laws adopted or passed subsequent to the date of the contract from which such rights spring, and do not reach decisions of courts construing constitutions or laws which were in effect when the contract was entered into, as has been held by a long line of decisions. extending from *Knox* v. *Exchange Bank,* 12 Wall. 379, to *Cross Lake Shooting and Fishing Club* v. *State of Louisiana,* 224 U. S. 632.

In deciding this question, this court is not limited to the mere consideration of the language of the opinion of the state court, but will consider the substance and effect of the decision, and will for itself determine what effect, if any, was given by it to the repealing act. *Fisher* v. *City of New Orleans,* 218 U. S. 438; *Cross Lake Shooting and Fishing Club* v. *State of Louisiana,* 224 U. S. 632, and *Louisiana Railway & Navigation Co.* v. *New Orleans,* 235 U. S. 164. While this court will exercise independent judgment as to the scope of the decision of the state court, it will give to that decision that respectful and sympathetic attention which is always due to the highest court of a State (*Fisher* v. *City of New Orleans, supra*), with the presumption always in mind, that the state courts will do what the Constitution and laws of the United States require. *Neal* v. *Delaware,* 103 U. S. 370, 389; *Chicago &c. R. R. Co.* v. *Wiggins Ferry Co.,* 108 U. S. 18; *New Orleans* v. *Benjamin,* 153 U. S. 411, and *Defiance Water Co.* v. *Defiance,* 191 U. S. 184.

An examination of the opinion of the Court of Appeals shows that the court, in its consideration of the repealing Act of 1913, not only did not give to it an effect which would impair any contract relation springing from the Act of 1907, but that, on the contrary, it concluded that the repeal "could not operate to confiscate any valid franchise or property right which the Long Sault Development Company had previously acquired under the act repealed," and that this conclusion made it necessary for the court to "consider and determine whether the legislature possessed the constitutional power to convey away the state control over the navigation of the St. Lawrence River to the extent attempted by the act of 1907."

And then addressing itself to the constitutional problem thus stated, the court proceeds, upon principle and authority, to decide: That, under the constitution of the State of New York, the power of the legislature of that State to grant lands under navigable waters to private persons or corporations is limited to purposes which may be useful, convenient or necessary to the public; that it has no power to so part with the title to such lands that the State may not in the future improve navigation over them, if the public interest shall so require; and that they are held by the State on such a trust for the public use that the legislature has no power to authorize the conveyance of them to a private corporation to maintain navigation thereover "in as good condition as . . . at present," thereby parting for all time with its power to improve such navigation.

The court finds its principal authority for these legal positions in the decision of this court in *Illinois Central Railroad Company* v. *Illinois*, 146 U. S. 387, in which it was decided: That the title which a State holds to land under navigable waters is different in character from that which it holds in land intended for sale and occupation, in the former case it being held in trust for the people of the

State, in order that they may enjoy the navigation of the waters and carry on commerce over them, free from obstruction or interference by private parties; that this trust devolving upon the State in the public interest is one which cannot be relinquished by a transfer of the property; that a State can no more abdicate its trust over such property, in which the whole people are interested, so as to leave it under the control of private parties, than it can abdicate its police powers in the administration of government and the preservation of the peace; and that the trust under which such lands are held is governmental so that they cannot be alienated, except to be used for the improvement of the public use in them.

This was a pioneer decision upon the subject at the time it was rendered by a divided court, but the principles upon which it proceeds have been frequently approved by this court. *Morris* v. *United States*, 174 U. S. 196; *United States* v. *Mission Rock Co.*, 189 U. S. 391, 406; *Kean* v. *Calumet Canal Co.*, 190 U. S. 452, 481; and they have been very widely approved by many of the highest courts of the States of the Union. Rose's Notes on U. S. Reports, Vol. 12, p. 270; Supp. III, p. 291; Supp. V, p. 369.

Having arrived at these conclusions of law, the Court of Appeals proceeds to make application of them to the Act of 1907, and concludes that that act, in terms, virtually turns over to the corporation the entire control of the navigation of the Long Sault Rapids (provided that the consent of Congress to the grant could be obtained), requiring only that the company shall pay certain stipulated sums of money, and that it shall preserve the navigation of the river "in as good condition as . . . the same is at present," and says that, no matter how much the interest of the public might demand the improvement of the river in the future, the State would be powerless to act, either directly or by constraint upon the corporation, and for this reason it concludes that the act is, in substance, an abdica-

tion of the trust upon which the State holds control over the St. Lawrence River as navigable water and that, therefore, it is unconstitutional and void. Whether this construction placed upon the act is the one which this court would place upon it if coming to an original interpretation of it, we need not inquire, for, under the authorities hereinbefore cited, the prohibition of the Constitution against the impairing of contracts by state legislation does not reach errors committed by state courts when passing upon the validity and effect of a contract under a constitution or laws existing when it is made.

This discussion of the decision by the Court of Appeals makes it very clear that that decision does not give any effect whatever to the repealing Act of 1913, but that, wholly independent of that act and proceeding upon sound principle and abundant authority, the court arrived at the conclusion that the Act of 1907 was unconstitutional and void, and therefore it results that this case does not present any question for decision under the Federal Constitution, and that, for want of jurisdiction, the writ of error must be

*Dismissed.*

Mr. Justice McKenna and Mr. Justice Pitney dissent upon the ground that Chapter 355 of the Laws of 1907 of the State of New York, creating the Long Sault Development Company and conferring upon it certain rights and franchises, when accepted, as it was, by the company, constituted a contract between the State and the company; that the repealing act and accompanying legislation passed in 1913 (Chaps. 452 and 453) had the effect of impairing the obligation of that contract, in contravention of § 10 of Article I of the Federal Constitution; and that effect was given to the latter legislation by the decision under review.