16  *Rossborough Mfg. Co., et al. v. Trimble, et al.*    Nos. 96-3149/3150/3151/3152/3153/3154/3155/3156/3259

are unable to discern any from this record.[3] This is not a case in which "contractual rights have arisen or vested rights have been acquired under [a] prior decision" of the Ohio Supreme Court, *Peerless Elec. Co. v. Bowers*, 129 N.E.2d 467, 468 (Ohio 1955), such that the *Brady* and *Mayfield* decisions would not retroactively apply to these plaintiffs' claims. The validity of the Intentional Tort Act was never affirmed by the Ohio Supreme Court, and the rights claimed by these plaintiffs did not arise under any prior decision of the Ohio Supreme Court. Indeed, the Ohio Supreme Court's decision in *Mayfield* can be interpreted only as confirming its announcement in *Brady* that the Intentional Tort Act was void from its inception. As we have explained above, because that Act was held to be unconstitutional and void from its inception, it conferred no rights and afforded no protections to the plaintiffs.

## CONCLUSION

For the foregoing reasons, we **affirm** the dismissal of each of the complaints.

---

[3]As the district court pointed out, the plaintiffs might have a claim for reimbursement of the premiums paid into the Intentional Tort Fund, but that claim would arise entirely because the Intentional Tort Act was adjudged unconstitutional, and presents no federal question.

*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0290P (6th Cir.)
File Name: 02a0290p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ROSSBOROUGH MANUFACTURING CO. (96-3152); JOHN ROBERTS, Intervenor (96-3155); PATTY ELSER, Intervenor (96-3149); NORMA J. CRINER, Administratrix of the Estate of Scott D. Schaffer, Intervenor (96-3156); WILEY ORGANICS, INC., Intervenor (96-3150); TRIPLE A IN THE U.S.A., INC. (96-3259); RYKON SPECIALIZED PLATING, INC. (96-3259); FRANK STUMP, Intervenor (96-3153); WILLIAM Y. MOORE, Intervenor (96-3154); JAMES PEET, Intervenor (96-3151),
    *Plaintiffs-Appellants,*

v.

J. WESLEY TRIMBLE; J. KENNETH BLACKWELL; ALL TOOLS, INC.; J.L. FOTI

Nos. 96-3149/ 3150/3151/3152/ 3153/3154/3155/ 3156/3259

CONSTRUCTION CO.; L-MOR, INC., doing business as Darling Fire & Safety; WILLIAM PFEIFFER, Chief Executive Officer and Administrator of Ohio Bureau of Workers' Compensation; JAMES CONRAD; JOSEPH DETERS,
*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 92-01916; 95-01084—Donald C. Nugent, District
Judge.

Argued:  February 1, 2002

Decided and Filed:  August 26, 2002

Before:  SUHRHEINRICH, SILER, and BATCHELDER,
Circuit Judges.

_____

**COUNSEL**

**ARGUED:**  John D. Maddox, ARTER & HADDEN, Washington, D.C., for Appellants.  Elise W. Porter, OFFICE OF THE ATTORNEY GENERAL OF OHIO, Columbus, Ohio, for Appellees.  **ON BRIEF:**  Paul W. Newendorp, WEINER, SUIT & COURY, Warren, Ohio, Joseph C. Winner, MCFADDEN, WINNER & SAVAGE, Columbus, Ohio, Scott E. Stewart, Cleveland, Ohio, John D. Maddox, ARTER & HADDEN, Washington, D.C., Irene C. Keyse-

protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed.'") (quoting *Norton v. Shelby County*, 118 U.S. 425, 442 (1886)). Subsequent to its decision in *Brady*, the Ohio Supreme Court held that *Brady* had "invalidated [the statute] in its entirety, negating any right to reimbursement of settlement money and attorney fees." *Mayfield*, 597 N.E.2d at 119.  The plaintiffs mistakenly believe that S.B. 192—which formally repealed the unconstitutional Intentional Tort Act and provided for the disbursement of the moneys in the Intentional Tort Fund—impaired their contractual rights to reimbursement from the moneys in the Intentional Tort Fund.  In fact, that legislation had no effect whatsoever on the rights the plaintiffs claim were impaired.  It was the judgment of the Ohio Supreme Court that rendered the Intentional Tort Act—and hence, the Intentional Tort Fund created by that Act—nullities that conferred no rights and afforded no protections.  This judgment, even if erroneous, is not within the reach of the prohibition of the Constitution against the impairing of contracts by state legislation. *Long Sault*, 242 U.S. at 280.

**D.  Additional Constitutional Claims**

The plaintiffs also assert violations of the Fifth Amendment's prohibition against the taking of private property for public use without providing just compensation, and the Fourteenth Amendment's protection against deprivations of life, liberty, or property without due process of law.  These alleged violations depend on the denial of contract, property, or substantive rights that were wholly derived from the Intentional Tort Act.  The plaintiffs have provided no basis other than the Intentional Tort Act for their claimed contract, property, or other substantive rights, and we

[i]f it did not give effect to that act, either expressly or by implication, this court is without jurisdiction to review its decision, for the reason that the provisions of the Constitution of the United States for the protection of contract rights are directed only against the impairment of them by constitutions or laws adopted or passed subsequent to the date of the contract from which such rights spring, and do not reach decisions of courts construing constitutions or laws which were in effect when the contract was entered into.

*Id.* at 277. The Court concluded that the state court had given the repeal no effect, but had determined—without regard to the repeal—that the 1907 legislation was unconstitutional and void under the state's constitution. *Id.* at 278. Accordingly, the Court held, because "the prohibition of the Constitution against the impairing of contracts by state legislation does not reach errors committed by state courts when passing upon the validity and effect of a contract under a constitution or laws existing when it is made," the case presented no federal question over which the Court had jurisdiction. *Id.* at 280.

*Long Sault* makes it clear that the contracts clause of the Constitution protects the obligations of contracts from being impaired by legislation; it does not protect those obligations from the judgments of courts. *Id.* at 280; *accord Barrows v. Jackson*, 346 U.S. 249, 260 (1953). As was the case in *Long Sault*, the statute under which the plaintiffs here claim contract and property rights was declared unconstitutional by the highest court of the state because it exceeded the scope of legislative authority granted to the General Assembly under the Ohio Constitution. *Brady*, 576 N.E.2d at 729.

The rule in Ohio has long been that when a statute is held to have been unconstitutional as of its enactment, that statute is void *ab initio*. *City of Middletown v. Ferguson*, 495 N.E.2d 380, 388 (Ohio 1986) ("'An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no

Walker, ARTER & HADDEN, Cleveland, Ohio, Mark F. Kruse, MCINTYRE, KAHN, KRUSE & GILLOMBARDO, Cleveland, Ohio, Gregory K. Pratt, PRATT & SINGER, Middletown, Ohio, Mark E. Barbour, JEFFRIES, KUBE, FORREST & MONTELEONE, Cleveland, Ohio, Elizabeth A. Raies, TZANGAS, PLAKAS, MANNOS & RECUPERO, Canton, Ohio, Michael P. Harvey, MICHAEL P. HARVEY COMPANY, Rocky River, Ohio, for Appellants. Elise W. Porter, OFFICE OF THE ATTORNEY GENERAL, Columbus, Ohio, for Appellees.

---

**OPINION**

---

ALICE M. BATCHELDER, Circuit Judge. The plaintiffs appeal the district court's order dismissing for failure to state a claim and for lack of jurisdiction their complaint demanding reimbursement from the now-defunct Intentional Tort Fund, created by the Intentional Tort Act, Section 4121.80 of the Ohio Revised Code, which was declared unconstitutional and void ab initio by the Ohio Supreme Court in *Brady v. Safety-Kleen Corp.*, 576 N.E.2d 722 (Ohio 1991). The plaintiffs contend that the actions of the State defendants in denying those claims constituted a violation of the contracts clause, an unconstitutional taking without just compensation and a deprivation of plaintiffs' due process rights, and gave rise as well to a cause of action under 42 U.S.C. § 1983. The Treasurer of the State of Ohio and the Ohio Workers' Compensation Administrator assert Eleventh Amendment immunity. As we shall explain, we do not find that the state defendants are entitled to Eleventh Amendment immunity, but we conclude that the plaintiffs can demonstrate no deprivation of any of their constitutional rights, and they can state no claim cognizable under § 1983. We will therefore affirm the judgment of the district court.

## BACKGROUND

### A.  History of Suits for Work-Related Injury in Ohio

In 1924, Article II, Section 35 of the Ohio Constitution was amended to provide:

> For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment, laws may be passed establishing a state fund to be created by compulsory contribution thereto by employers, and administered by the state, determining the terms and conditions upon which payment shall be made therefrom.  Such compensation shall be in lieu of all other rights to compensation, or damages, for such death, injuries, or occupational disease, and any employer who pays premiums or compensation provided by law, passed in accordance herewith, shall not be liable to respond in damages at common law or by statute for such death, injuries or occupational disease.

Following this amendment, the Ohio General Assembly created the State Insurance Fund for payment of compensation for injuries covered under the workers' compensation system.  All Ohio employers were required to pay premiums for coverage by the State Insurance Fund or to make arrangements to self-insure the compensation due their employees for injuries arising out of and in the course of employment.

In 1982, the Ohio Supreme Court decided *Blankenship v. Cincinnati Milacron Chem., Inc.*, 433 N.E.2d 572 (Ohio 1982), which held that the Ohio Constitution did not preclude actions for damages for workplace injuries suffered as a result of the employer's intentional conduct.  *Id*. at 576.  The General Assembly responded with the Intentional Tort Act, Ohio Revised Code ("ORC") § 4121.80, which became

### C.  Impairment of the Obligation of Contract

The threshold issue in this case is whether—assuming for purposes of this discussion the existence of the contractual rights the plaintiffs claim—the actions of the state defendants violated the contracts clause of the United States Constitution.  We conclude that they did not.  We begin with the language of the clause itself, and the principles established in *Long Sault Dev. Co. v. Call*, 242 U.S. 272 (1916).

Article I, Section 10 of the Constitution prohibits the states from engaging in several specific kinds of activities.  In particular, that section decrees that "No State shall . . . pass any . . . Law impairing the Obligation of Contracts."  U.S. CONST., Art. I, Section 10.  In *Long Sault*, the Supreme Court expressly held that the contracts clause applied to state legislation, but not to decisions of state courts.  In that case, the Court examined its jurisdiction to review a decision of the highest state court invalidating a 1907 New York statute that had incorporated Long Sault Development Company and granted it certain rights to the use of the waters and beds of the St. Lawrence River.  *Long Sault*, 242 U.S. at 273-74.  Shortly before the 1907 law was revoked by the state legislature in 1913, Long Sault brought an action in state court to test its constitutionality.  *Id*. at 275.  The highest state court held that the repeal of the 1907 statute could not operate to impair any valid contract or property rights conferred by that statute, but that the 1907 statute exceeded the power of the state legislature under the state constitution, and therefore Long Sault had acquired no valid franchise or property rights under the statute.  *Id*. at 278.

Long Sault appealed to the United States Supreme Court, which undertook a de novo review of the state court proceedings to determine what effect, if any, the state court gave to the 1913 repeal in reaching its decision, because

Specifically, if "the judgment sought would expend itself on the public treasury or domain," it is a suit against the state. *Id*. at 101-02, n.11.

There is an exception to this rule, however—a suit challenging the constitutionality of a state official's action is not one against the State. *Ex Parte Young*, 209 U.S. 123, 150-60 (1908). The holding in *Ex Parte Young* applies only to prospective non-monetary relief such as injunctions. *Edelman v. Jordan*, 415 U.S. 651, 664 (1974). The award must govern the official's future conduct. *Pennhurst*, 465 U.S. at 102-03. Thus, suits demanding retroactive relief, such as requests for money that should have been paid, do not fall under the *Ex Parte Young* exception. *Edelman*, 415 U.S. at 664.

In the case at hand, the plaintiffs explicitly demand prospective injunctive relief and a declaratory judgment; implicitly, they seek reimbursement that the claim should be paid out of the Fund. While it may be argued that the explicit demand for injunctive relief and a declaratory judgment is merely a cover for the implicit request for money, we conclude that the *Ex Parte Young* exception applies. The plaintiffs challenge the constitutionality of the Treasurer's and Administrator's administration of the Fund. Were we to find that the actions of those officials are unconstitutional, and to issue an injunction preventing the continued unconstitutional administration of the Fund, the plaintiffs would not need a judgment against the state awarding them money damages because the injunction would lead to the lawful administration of the Fund and reimbursement for the plaintiffs. Accordingly, we hold that the Treasurer and Administrator are not entitled to Eleventh Amendment immunity.

effective on August 22, 1986. The Intentional Tort Act declared the immunity from common law suit established in Article II, Section 35 of the Ohio Constitution an essential aspect of the Ohio Workers' Compensation System and explained that the System was intended to remove from the common law tort system all disputes between employers and employees except as expressly provided by the Act. ORC § 4121.80(B).

The Intentional Tort Act restored to employers the complete, state-controlled coverage of employee claims for workplace injury in two ways. First, it created the Intentional Tort Fund [hereinafter "Fund"] to complement the State Insurance Fund's monopoly of insurance coverage for workers' compensation claims. The Act required that employers participate in the Fund to cover their risk of loss from employee claims for workplace injury not covered by the workers' compensation system, ORC § 4121.80(D), and that the Ohio Workers' Compensation Administrator pay all damages, defense attorney fees, and costs out of the assets of the Fund, ORC § 4121.80(E).

Second, the Intentional Tort Act regulated and limited employee claims of injuries resulting from the intentional acts of employers. Each such claim was required to be submitted to a judge of the Ohio Court of Common Pleas who would determine liability for damages, that is, whether the employer committed an intentional act that caused the injury. ORC § 4121.80(D). If the Common Pleas Court found the employer liable, the Industrial Commission of Ohio would then determine the amount of damages and make an award, which could not exceed $1,000,000.00. *Id*. The Intentional Tort Act did not contain any provision for settlement of these claims.

From 1982 until the Intentional Tort Act was enacted in 1986, Ohio employers, including the original plaintiff in this action, Rossborough Manufacturing Company [hereinafter

"Rossborough"], could and did obtain commercial insurance policies or endorsements, called "stop-gap" insurance, for the purpose of covering the new risk of loss from employee claims for workplace injuries created by *Blankenship*. From August 22, 1986, onward, Ohio employers, including Rossborough, were required to purchase their insurance coverage for the post-*Blankenship* employee claims for workplace injury from the Intentional Tort Fund.

On January 31, 1991, the Ohio Court of Appeals explicitly recognized that the Intentional Tort Act did not mention settlement agreements. *Chrysler Motors Corp. v. Mayfield*, No. 89AP-1203, 1991 WL 10915, at *2 (Ohio Ct. App. Jan. 31, 1991). That court held that the Fund was not created to reimburse employers for amounts paid pursuant to settlement of claims; rather, the Intentional Tort Act required a court determination of liability followed by the Industrial Commission's determination of damages, which were to be paid from the Fund, not from the employer's pocket. *Id*.

The Intentional Tort Act remained good law until August 27, 1991, when the Ohio Supreme Court held the Act unconstitutional *in toto* because it exceeded the scope of legislative authority granted to the Ohio General Assembly under the Ohio Constitution. *Brady v. Safety-Kleen Corp.*, 576 N.E.2d 722, 724-25 (Ohio 1991). The Ohio Supreme Court found that the Workers' Compensation Act afforded protection for negligent acts but not for intentional conduct and that the Intentional Tort Act did not further the purposes of Article II, Section 35 of the Ohio Constitution; rather, it circumvented that section completely. *Id*. at 729. Announcing that intentional acts committed by an employer, even if committed at the workplace, are outside the scope of the purposes of the Ohio Constitution, *id*., the Ohio Supreme Court held that an employee has the right to receive workers' compensation benefits and has in addition a cause of action against an employer for an excess of damages over the

judgment under Rule 59(e). Those motions were denied, and the plaintiffs timely appealed, challenging only the dismissal of their federal claims.

## ANALYSIS

### A. Standard of Review

We review de novo a district court's dismissal of a complaint for failure to state a claim under Rule 12(b)(6), *Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996), and for lack of subject matter jurisdiction under Rule 12(b)(1), *Jones v. City of Lakeland, Tenn.*, 224 F.3d 518, 520 (6th Cir. 2000). We must accept as true all of the well-pleaded allegations of the complaint, construing those allegations in the light most favorable to the plaintiff. *Bower*, 96 F.3d at 203. For a dismissal to be proper, "it must appear beyond doubt that the plaintiff would not be able to recover under any set of facts that could be presented consistent with the allegations of the complaint." *Id*.

### B. Eleventh Amendment Immunity

As a threshold matter, we must determine whether the Treasurer and the Administrator are entitled to Eleventh Amendment immunity. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. An unconsenting state is immune from suits brought in federal courts by citizens of that state as well as citizens of another state, and suits against state officials are barred when "the state is the real, substantial party in interest." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984). "[R]elief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter." *Id*. at 101.

12(b)(6), holding that under Ohio law an unconstitutional statute, whether state or federal, is in reality no law, that its unconstitutionality dates from the time of the law's enactment, and the statute is therefore inoperative, as if it had never been passed. The district court further held that a contract resting on an unconstitutional statute creates no obligation that could be impaired by subsequent legislation. The district court acknowledged an exception to this principle: where a legislative act has been held to be constitutional, particularly by the Ohio Supreme Court, a subsequent judicial decision holding the act unconstitutional may be limited to prospective operation only. Accordingly, the court said, rights acquired under a statute adjudged by a court to be constitutional are valid legal rights that are protected by the constitution, not by judicial decision. But the court held that this exception did not apply to the Intentional Tort Act because that statute had never been adjudged to be constitutional, and it is the general rule that anyone assuming the validity of legislation does so at his own peril. Moreover, the court pointed out, the Ohio Supreme Court's *Mayfield* decision made it clear that *Brady*'s invalidation of the Intentional Tort Act applied retroactively.

Because the unconstitutional Intentional Tort Act created no enforceable interest or property right in Rossborough, the district court concluded, the counts in Rossborough's complaint alleging contracts clause and due process violations and an unconstitutional taking failed to state claims upon which relief may be granted. Because Rossborough's constitutional claims failed, the court held, its § 1983 claim also failed. Since no federal claims remained, the district court chose not to exercise jurisdiction over the state law claims.

After the Triple A and Rykon complaints were dismissed on the same grounds as the Rossborough claims had been dismissed, all of the plaintiffs moved to vacate the dismissals under Rule 60(a) or, alternatively, to alter or amend the

amount received or receivable under the Ohio Constitution, *id.* at 729-30.

In response to *Brady*, the Ohio General Assembly enacted an uncodified law, S.B. 192, 119th Gen. Assem., Reg. Sess. (Ohio 1992) (enacted) [hereinafter "S.B. 192"], which was signed by the Governor on June 30, 1992, and became effective on September 29, 1992. S.B. 192 § 2 formally repealed the unconstitutional Intentional Tort Act. Section 5 of S.B. 192 required the transfer of the Fund's assets into a new Intentional Tort Disbursement Fund that was to be in the custody of the State Treasurer but not part of the state treasury, and was to be used solely to "pay attorney's fees . . . to attorneys for services provided on behalf of an employer under former section 4121 of the Revised Code for attorney's fees filed on or before October 27, 1991," up to a total amount not to exceed $1,000,000; to pay for the costs of administration of the Fund in an amount not to exceed $50,000; and from the moneys remaining, to prorate a credit to the administrative assessment of employers that had paid into the Intentional Tort Fund, reducing such credit for amounts paid out either in awards or attorney's fees pursuant to the prior section 4121.80. As of February 20, 1992, the Fund had total assets of $37,986,824.69.

The *Brady* decision and the enactment of S.B. 192 were followed by an Ohio Supreme Court per curiam decision on September 2, 1992, holding that *Brady*'s invalidation of the Intentional Tort Act in its entirety had negated any right of employers to reimbursement from the intentional tort fund for moneys paid out in settlement of claims and attorney fees. *Chrysler Motors Corp. v. Mayfield*, 597 N.E.2d 118, 119 (Ohio 1992).

### B.  Time Line of Events for the Present Action

In January 1991, Rossborough was sued for damages in state court pursuant to ORC § 4121.80, by a worker who had been injured and by the estates of two workers who had been killed in an explosion at its Ohio manufacturing plant one year earlier.  No determination of liability was made by the state court.  In September 1992, shortly before the effective date of S.B. 192, Rossborough brought this action in federal court against J. Wesley Trimble, Administrator of the Ohio Bureau of Workers' Compensation, and Mary Ellen Withrow, Treasurer of the State of Ohio, in their official capacities,[1,2] seeking a judgment declaring that S.B. 192 violated various of Rossborough's constitutional rights and requiring that payment be made from the Intentional Tort Disbursement Fund of any damages, attorneys fees, and costs resulting from the state court actions.  In an order stipulated to by the parties, the district court stayed the transfer of the moneys in that Fund, pending resolution of this litigation.

---

[1]Sandra H. Devery, William Pfeiffer, and C. James Conrad succeeded Trimble.  J. Kenneth Blackwell and Joseph T. Deters succeeded Withrow.

[2]Also named as defendants in this action are several corporate entities, which Rossborough sues both individually and as representatives of a certified class of private employers seeking, in a state court action, to have the assets of the Intentional Tort Fund transferred to the Workers' Compensation Fund.  Further, there are also several additional plaintiffs who were permitted to intervene in the instant action; each of them asserts claims against the Intentional Tort Fund.  Finally, plaintiffs Triple A and Rykon sued the state defendants in separate actions, raising claims essentially similar to those raised by Rossborough; the Triple A and Rykon actions were consolidated with Rossborough's action in the district court and dismissed, and have been consolidated with Rossborough's appeal for briefing and argument.  Because our disposition of this action with regard to Rossborough is dispositive of the claims of all plaintiffs against all defendants, it is not necessary for us to describe in any detail the claims of the intervenor plaintiffs or Triple A and Rykon, or Rossborough's claims against the corporate defendants.

In December 1992 and January 1993, after the *Brady* decision, after S.B. 192 became effective, and after the *Mayfield* decision, Rossborough settled the state court lawsuits arising out of the 1990 explosion and paid the plaintiffs the agreed amounts.  Rossborough then sought reimbursement from the Fund and, unsuccessful in that effort, amended the complaint in this action to include the fact of settlement of the state lawsuits and the state defendants' failure to reimburse.

Rossborough's complaint alleged six separate counts.  First, Rossborough claimed that the Intentional Tort Act had vested in Ohio employers contractual rights to indemnification by the Fund for damages, attorney's fees, and costs related to workplace injuries; that in reliance on the Intentional Tort Act, Rossborough had paid premiums into the Intentional Tort Fund and now had vested contractual rights to reimbursement from that Fund; and that S.B. 192 violates Article I, Section 10, Clause 1 (the contracts clause) of the United States Constitution because it impairs Rossborough's vested contractual rights to reimbursement from that Fund.  The second count claimed that Rossborough had paid its premiums into the Intentional Tort Fund as required by Ohio law, and the denial of its claims for reimbursement from that Fund violated the due process clause of the Fourteenth Amendment.  In the third count, Rossborough claimed that S.B. 192 and the state defendants' denial of its claims for reimbursement from the Fund deprived it of property without compensation, in violation of the Fifth and Fourteenth Amendments.  Rossborough's fourth count asserted a § 1983 claim against the state defendants' actions  for the alleged constitutional violations.  The fifth count demanded that the assets of the Fund be placed in a constructive trust to indemnify Rossborough.  Count six asserted statutory rights under the Intentional Tort Act.

On September 29, 1995, the district court granted the state defendants' motion to dismiss pursuant to Rules 12(b)(1) and