79 So.2d 199 (1955)
A. J. HANSON, d/b/a A. J. Hanson Company,
v.
INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL NO. 406.
No. 3958.
Court of Appeal of Louisiana, First Circuit.
March 25, 1955.
*200 Dodd Hirsch & Barker, New Orleans, for appellant.
Breazeale, Sachse & Wilson, Baton Rouge, Lestage & Arnette, Jennings, for appellee.
ELLIS, Judge.
A. J. Hanson, d/b/a A. J. Hanson Company, filed this suit in which he prayed for a temporary restraining order, temporary injunction, and after hearing, a permanent injunction enjoining "said defendants and members and associates and all members of said International Union of Operating Engineers, Local No. 406, affiliated with the A. F. of L." from "in any manner picketing or maintaining either singularly or collectively, pickets at or about or near petitioner's place of business, including all buildings, occupied by petitioner's employees when at work, storage yards, parking lot, and particularly at those areas wherein petitioner is conducting its operation in the Parish of Jefferson Davis, and particularly across those areas wherein petitioner must have egress and ingress to and from his lots or material storage dumps to the work which he is performing and from engaging in what is commonly designated as picketing and from ordering, coercing or inducing any of plaintiff's employees to leave their jobs during working hours, to engage in any order work stoppages or strikes, or from issuing any orders which may result in a strike or work stoppage and from issuing any orders for meetings, assemblies or any other purposes, designed to or resulting in petitioner's employees leaving their jobs during regular working hours * * *".
Without notice or hearing, that is, immediately upon presentation of the order, the District Court issued a temporary restraining order in accordance with the wording of plaintiff's prayer, supra. Two days later, October 13, 1954, the temporary restraining order was amended to reduce *201 the restrictions placed on the defendant for, as stated by the Trial Judge in his written reasons: "It appeared that the language of the order was more far reaching than had been realized when the matter was first presented."
The matter came up for hearing on October 19, 1954 and the named defendants, who were the International Union of Operating Engineers, with Local No. 406 affiliated with A. F. of L. through R. C. Coffer, business agent, and/or Harry Fuller, business agent, Harry Fuller, individually, and R. C. Coffer, individually, C. B. Thompson, M. Carter, H. C. Deson, and Arnold E. Webb, filed motion to dissolve and reserving all their rights under the motion, then filed exceptions which were based upon the same allegations as made in the motion to dissolve. The grounds for the motion to dissolve read in part as follows:
"1. From the prayer of its petition plaintiff has used the International Union of Operating Engineers, Local No. 406 through R. C. Coffer its business agent and Harry Fuller, business agent, and seeks to restrain said local union, its members, associates and sympathizers; that according to the petition defendant International Union of Operating Engineers, Local 406, is an unincorporated voluntary association and (1) having no corporate existence it cannot be impleaded into court under its group name, and (2) that Harry Fuller, R. C. Coffer, C. B. Thompson, M. Carter, H. C. Deson and Arnold E. Webb upon whom service of process was made are not authorized to accept service of citation for defendant organization. State ex rel. Doane v. [General Longshore Workers], I.L.A. [Local Union 1418, La. App.], 61 So.2d 747.
"2. That petition is so vague and indefinite and contains nothing but conclusions of law and no fact and is insufficient to support the order.
"3. That petitioner is engaged in a business affecting interstate commerce and the jurisdiction of the state court is preempted in a matter of this nature under the provisions of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 151 et seq.
"4. That the petitioner has failed to exhaust its administrative remedies and failed to so allege, and the petition is premature in that petitioner has failed to allege that it has endeavored to settle the labor dispute under the provisions of LSA-R.S. 23:861 et seq. which declares the public policy of Louisiana, particularly LSA-R.S. 23:870.
"5. And additionally, that it has failed to take the pre-requisite steps required by LSA-R.S. 23:821 et seq.
"6. Petition discloses no right or cause of action.
"7. The activities of defendant are protected by the I and XIV Amendments to the Constitution of the United States and Article I of the Constitution of Louisiana, in that defendants are engaged in a labor dispute with plaintiff here."
On October 18 or one day prior to the filing of the motion to dissolve, plaintiffs had filed a supplemental and amended petition.
With reservation of all rights under the motion to dissolve and exceptions previously filed, the defendants filed an answer and the matter came up for trial on October 19 but no evidence was taken as the attorneys for plaintiff and defendants entered into a stipulation of fact which is as follows:
"I. Plaintiff is a road contractor operating only in Louisiana. The road he is now building is a part of the State highway system and not a part of any national highway and, for the purpose of this case it is stipulated that the plaintiff is not engaged in interstate commerce.
"II. The individual defendants are officers and members of the Operating Engineers, Local 406, A.F.L., the other defendant.

*202 "III. The plaintiff has no contract with the Defendant labor organization, and the Defendant labor organization does not represent any of the employees of the Plaintiff and the Defendant labor organization has not asked any of Plaintiff's employees to join the union and has not asked the Plaintiff for any collective bargaining agreement or other contract.
"IV. Picketing of the job by the Defendants began October 7, 1954. There were four pickets authorized to represent the Defendant labor organization who were placed across the access to the place where plaintiff and his employees were engaged. Fuller, one of the individual defendants was also present, and was joined by about 25 people whom the defendants state were there to apply for jobs or who were employees of T. L. James Construction Company, engaged in road work nearby, across the State road from Plaintiff's material pile and who were generally milling about the place.
"V. The same conditions prevailed each day until the temporary restraining order was issued in this caseexcept that there were not more than 20 instead of 25 people assembled in addition to the pickets on each day after October 7, 1954.
"VI. Signs carried by the pickets read:
"`A. J. Hanson does not have an agreement with Local 406:'
No other legend was used.
"VII. Defendants would show, though the plaintiff does not concede the relevancy or admissibility of the same, that union wages for the type of work being performed by plaintiff's employees prevailing in the area are:

 per hour
Crane and Dragline Operators $2.25
Bull dozer operators 2.00
Sheepsfoot roller operators 1.75

While the wages paid by plaintiff are:

 per hour
(1) Dragline operators 2.00
(1) Bull Dozer operators 2.00
(1) Sheepsfoot Roller operator
 1.25 to 1.40
 Crane Operator None

The other five employees of plaintiff do not do work covered by the classifications of the defendant labor organization.
"VIII. No monetary measure can be made of the damages being suffered by the plaintiff by having the job stopped by the picketing because completion of it depends upon the availability of workmen and suitability of the weather and the non-union employees of the plaintiff would not work while the picketing was in progress. Though there was no violence on the picket line, the plaintiff's employees were asked not to cross it. If called to testify, R. W. Harrison, the foreman for the plaintiff would testify that a man in the group of people assembled but not identified as a picket or official of the union, told him that `It might not be healthy for any one to cross the picket line.' None of the plaintiff's employees were then present. None of the employees of plaintiff did cross the picket line and employees of the plaintiff would not work while the job was being picketed but returned to work after the issuance of the temporary restraining order issued herein on October 11, 1954.
"IX. Three or more members of the defendant labor organization who are residents of Jefferson Davis Parish applied to plaintiff's foreman for jobs and were refused, but Harrison, the foreman did not ask them about their union status and did not know anything about their union status and had brought all of his crew (except one man) from other jobs where they had worked for plaintiff near Pineville, Louisiana.
"X. Defendant labor organization has contracts with other employers engaged *203 in similar work in the area where plaintiff customarily engages in work and has members employed at the wages shown in Paragraph VII above.
"XI. Presently T. L. James Construction Company is employing men in the same work classification as those of the plaintiff's employees, who are members of the defendant labor organization, on the same job site and at the union scale and there has been no interference or attempt to prevent those employees from going to work through or around the picket line.
"XII. Plaintiff has not been requested by defendants to discharge any employees and no demand has been made that he execute a contract requiring union membership or that he employ only union men, and no demand for any contract at all has been made upon him.
"XIII. Fuller, one of the defendants herein, if called to testify would state that the purpose of the picket line was to:
"(a) Publicize the union contention that plaintiff's wages and working conditions were substandard compared to those of other contractors doing like work within the area.
"(b) Persuade non-union employees to co-operate with the union.
"(c) Persuade the plaintiff to make an agreement to raise the wage scale and other job conditions to those of other contractors doing like work in the area.
"(d) Persuade plaintiff to hire local residents, members of defendant labor organization, at the aforementioned union wage scales.
"XIV. The plaintiff started work on the job in question on or about September 15, 1954 and continued to work each day until October 7, 1954.
"XV. The work being done by petitioner on the job is the dirt work and grubbing phase of said road construction.
"XVI. The defendants, without admitting the relevancy, admissibility or justification of the same admit that the plaintiff and his employees would testify that they were afraid to cross the picket line.
"XVII. Fuller and Harrison agree that on October 6th Fuller asked Harrison if he knew that T. L. James had an agreement with Fuller. Harrison said he did not and referred Fuller to Mr. R. I. Allen, project manager for T. L. James, who advised Fuller that T. L. James had nothing to do with Hanson's part of the work as it had been subcontracted to Hanson.
"XVIII. When the picketing commenced, Hanson went to the Sheriff of Jefferson Davis Parish about it, was referred to the District Attorney. Mr. Hanson did not go to the District Attorney but asked his attorneys to try to get an injunction."
The District Court, after hearing oral arguments and the submission of briefs, in a well-written opinion, concluded that the picketing complained of was conducted by the defendants for a purpose in conflict with the provisions of the "right-to-work" statute of the State of Louisiana, and that plaintiff "has been injured within the meaning of the act as the result of said violation," and accordingly rendered the following judgment:
"It is ordered, adjudged and decreed that the motion to dissolve the temporary restraining order issued herein be and the same is denied.
"It is further ordered, adjudged and decreed that the exceptions of no cause or right of action filed herein on behalf of the Defendant be and the same are overruled.
"It is further ordered, adjudged and decreed that there be judgment in favor of the plaintiff and against the defendant perpetually enjoining the Defendants *204 and members and associates and all members of said International Union of Operating Engineers, Local No. 406, affiliated with the A. F. of L., from in any manner picketing, or maintaining either singularly or collectively, pickets at or about or near petitioner's places of business, including all buildings occupied by petitioner's employees when at work, storage yards, parking lot, and particularly at those areas wherein petitioner is conducting its operation in the Parish of Jefferson Davis and particularly across those areas wherein petitioner must have egress and ingress to and from its lots or material storage dumps to the work which it is performing and from engaging in what is commonly designated as picketing and from ordering or coercing any of plaintiff's employees to leave their jobs during working hours, or to engage in and order work stoppages or strikes."
Defendant filed a motion for rehearing, among other things praying that "* * * In view of the grave constitutional questions involved, we request that the Court, if it should decide to issue the injunction, direct under what conditions the defendants can purge themselves of the objectionable conduct and continue to exercise their constitutional rights."
In ruling upon the quoted part of the motion the District Court said:
"* * * This does not appear practical. When the Defendant does purge itself of the objectionable conduct, that is, give notice that the unlawful purpose is no longer sought, but the picketing, the Court will then consider amending the injunction * * *."
The defendant, International Union of Operating Engineers Local No. 406, affiliated with the A. F. of L. by written motion secured a devolutive appeal to this Court.
In view of the fact that Counsel for defendants (We use "defendant" advisedly as not only the Union itself was made a party defendant but also the named individuals, supra. The judgment if rendered against the Union and the individually named defendant is final as to the latter in view of the fact that only the Union appealed) in their brief state that the motion to dissolve and the exceptions are the same and, therefore, the arguments on the grounds for the motion to dissolve will be decisive of the exceptions. We will, therefore, consider the grounds in the motion to dissolve in the order innumerated, supra.

1.
The only authority upon which the defendant relies for sustaining the motion on this ground is the case of State ex rel. Doane v. General Longshore Workers, I. L.A. Local Union 1418, International Longshoremen's Ass'n, 61 So.2d 747, 748, in which our learned brethren of the Orleans Court of Appeal held:
"In our opinion an unincorporated body may not, as such, in the absence of statute, sue or be sued in its society or company name and this conclusion is substantiated by virtue of the provisions of LSA-Civil Code, Art. 446 which reads:
"`Corporations unauthorized by law or by an act of the Legislature, enjoy no public character, and cannot appear in a court of justice, but in the individual name of all the members who compose it, and not a political body; although these corporations may acquire and possess estates, and have common interests as well as other private societies.'
* * * * * *
"Since we are of the opinion that an unincorporated body may not, as such in the absence of statute, sue or be sued in its society or company name, a fortiori, its president, upon whom process was served, is not authorized to receive citation for the members composing the group or to stand in judgment for them."
While there are numerous cases in which unions have sued or have been sued as such, the specific question under consideration *205 was not raised nor considered by the court in those cases. See Southern Bell Tel. & Tel. Co. v. Communications Workers of America, C. I. O., decided in East Baton Rouge Parish in 1952 and reported in 52 Am. Labor Cases 595; Twiggs v. Journeymen Barbers, Hairdressers, Cosmetologists and Proprietors International Union of America, Local 496, A. F. L., La.App., 58 So.2d 298, 52 Am. Labor Cases 527; Nelson v. Associated Branch Pilots of Port of Lake Charles, La.App., 63 So.2d 437; Building & Construction Trades Council of Lake Charles, and Vicinity v. Gasoline Plant Const. Corp., La.App., 54 So.2d 101.
Counsel for plaintiff also states in his brief:
"Not alone in Louisiana but in the basic labor law of the land `Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the Courts of the United States.' LMRA 1947, Sec. 301 B; 29 U.S.C.A. 141 et seq."
In Douglas Public Service Corporation v. Gaspard, 225 La. 972, 74 So.2d 182, 184, with Chief Justice Fournet as the organ of the Court, in considering an exception of no right of action predicated on the same contention as made in this case, the Supreme Court stated:
"A perusal of the petition shows the exception of no right of action, predicated on the contention that petitioner seeks to bring into court an unincorporate association by the citation of only a portion of its members, is without merit, for the union as such is not named as a party to the suit and has made no appearance of record. The suit was instituted against twenty-one named individuals, and it is prayed that these individuals be cited as officers, agents, and members of the union and that they and other agents, officers, and members of the union and all persons acting in concert with them be enjoined."
The Court further stated in the beginning of its opinion:
"The Douglas Public Service Corporation instituted proceedings seeking injunctive relief against twenty-one named defendants individually and as officers, agents, and members of the Oil Workers International Union, Local No. 447, affiliated with the CIO * * *."
Counsel for defendant argues and correctly, that the Douglas Public Service case is not on all fours or decisive of the issues under consideration in the case at bar for the reason that in that case the suit was against individuals composing the Union and not against the Union itself.
In the case of Godchaux Sugars, Inc., v. Chaisson (South Coast Corporation v. Chaisson), rendered by the Supreme Court on January 10, 1955, 78 So.2d 673, the same contention as we now have under consideration was made therein, viz.: "(1) that Local 317, an unincorporated association, and its members cannot be sued, served, or bound by suit against its individual members and officers in the absence of tortious acts; * * *" and the Supreme Court through Chief Justice Fournet, who also wrote the opinion in the Douglas Public Service case, supra, held:
"The first contention relied on for reversal (that an unincorporated association and its members cannot be sued or served through individual members or officers) is clearly without merit. This issue under an identical factual situation was decided adversely to the defendants in Douglas Public Service Corporation v. Gaspard, 225 La. 972, 74 So.2d 182. * * *
"Additionally, we think particularly pertinent and appropriate here the remarks of the trial judge to the effect that `time is of the essence in the nature of the relief prayed for in this case (and) to require the ascertainment of individual membership of an unincorporated association and thereafter individual citation as conditions precedent to the granting of relief,and thereby require plaintiffs to gather information almost exclusively within the knowledge *206 of defendants, without whose help it would be impracticable or perhaps even impossible to gather, and from whom hindrance and obstruction, rather than cooperation, could be reasonably anticipated,would be tantamount to a denial of relief. To hold that an unincorporated group must be individually named and cited before it is susceptible to restraint would be equivalent to holding that, by subterfuge of unincorporation, group action transcends individual rights and is unlimited and unrestrictable except within the purview of the criminal statute, or that corporations unauthorized by law cannot be restrained from doing irreparable injury except through the process of individual identification. We cannot in good conscience or sound logic reach that conclusion in the face of alleged irreparable injury.'"
The plaintiffs in the Godchaux Sugars and The South Coast Corporation cases, supra, "* * * instituted these suits to restrain the named defendants individually and as officers, agents, and employees of an organization known as the Sugar Workers Local No. 317 of the National Agricultural Workers Union (AFL) * * *."
While the first quoted portion of this opinion, in which the Supreme Court stated that the identical factual situation was decided adversely to the defendants in the Douglas Public Service Corporation case, supra, would not be squarely decisive of the question under consideration, still their apparent approval, quoted above, of the remarks of the trial judge which they thought "particularly pertinent and appropriate" might be construed as leaving that august body straddle of the fence, yet is such a strong indication that they intend to complete their climb by getting down on the opposite side of the fence that we, who must squarely decide the question, will accept the language used in the opinion by the Supreme Court on this point as at least an approval in the future should the question be squarely presented that it would hold that a labor union, even though it be an unincorporated body, could be sued as such without individually naming each member, contrary to the apparent provisions of Article 446 of the LSA-Civil Code and the specific holding in the Doane case, supra.
In addition to the above, under Act 252 of 1954, commonly termed the "Right-to-work Act" now included in our LSA-R.S. 23:881 through 23:888, and specifically under LSA-R.S. 23:886, "Any employer, person, firm, association, corporation, labor union or organization injured as a result of any violation or threatened violation of any provision of this Part or threatened with any such violation shall be entitled to injunctive relief in the manner provided by the injunction law of this state applicable to general civil matters, presently R.S. 13:4061-13:4071, against any and all violators or persons threatening violation." (Emphasis added.) This is the latest expression of the Legislature and will supercede any prior or contrary law, and under this act a "labor union" may exercise the same right granted to the other persons enumerated therein by way of the suit for injunctive relief. Along this line we quote approvingly the statement of counsel for plaintiff in his brief:
"The legislative will surely means nothing and fails in its purpose if the right to injunctive relief prescribed by Act 252 of 1954 Sec. 9 (R.S. 23:886) can be exercised only by a suit against innumerable members of an organization, the very roster of which is unknown to the plaintiff. This would be a travesty upon justice.
* * * * * *
"When our Constitution guarantees to the Courts the right to issue injunctions as necessary to the preservation of peace and order, when our Legislature stipulates in precise terms that injunctive relief shall be availed of to maintain the public order which it has pronounced as the public policy of this State, when it is recognized, that to require the suit to name every member of the Union would be to render nugatory the Legislative intent that injunctions be issued, no one is entitled to ask this Court to refuse the injunction because *207 of a general provision of the law enacted many years ago with no thought of the problem now before the Court, the application of which would be wholly fortuitous. Especially is this true when Article 446 of our Civil Code under which this Union would seek to avoid presenting its cause to this Court is to be found under `Title Xof Corporations' a portion of our Civil Code which has been replaced almost wholly by Act 25 of 1928 as amended; now R.S. 12:1 et seq. and more particularly those provisions pertaining to non-profit corporations, R.S. 12:101-12:155.
* * * * * *
"* * * But even if we proceed on the narrower grounds of the letter of the law rather than upon the broader concept of its purpose we arrive at the same end. Labor unions enjoy recognition as entities by reason of the law and as a natural concomitant of the benefits of the law, they must bear the obligations of the law * * *."
For the reasons given the District Court correctly denied the dissolution of the restraining order and overruled the plaintiff's exception on the grounds above discussed.
Counsel for the defendant has added an additional ground to his motion to dissolve which was not before the lower court, viz.:
"The Court should have maintained the motion to dissolve for the further reason that the petition and supplemental petition were improperly verified and not supported by proper affidavits in accordance with R.S. 13:4064 and R.S. 13:4067."
Under this contention it is apparently defendant's position that the petition and supplemental petition were verified by A. J. Hanson before W. G. Arnett, counsel of record, and by Hopkins P. Brazeale, Jr., one of the attorneys for plaintiff, before Robert P. Brazeale, respectively, and that the affidavits verifying the original and supplemental petitions were not separately numbered and entitled. It is counsel's contention that "since the same clause referring to `supporting affidavits' also refers to the `verified pleading' as alternate proof, it is apparent that these must be read together and the verification of the petition on which the preliminary injunction or the restraining order is granted must likewise meet the same requirements as the alternate form of proof, the supporting affidavits."
A mere reading of Section 2 of Act 29 of 1924 (now LSA-R.S. 13:4067) will show that upon any hearing for preliminary injunction or for dissolution and modification of the order or preliminary writ of injunction, the court "may hear such application upon the verified pleadings and supporting affidavits or may demand proof as in ordinary cases * * *". It is true that the supporting affidavits referred to are required to be entitled and numbered in the cause and sworn to by the affiant before some person authorized to administer oaths, but the verification of the pleadings is no different than in any ordinary case, and is in no wise affected by the requirement as to supporting affidavits. We find no merit in this ground for dissolution.

2.
In this ground plaintiff contends that the petition is too vague, indefinite and insufficient to support the order. We note in the reasons of the District Court that this ground was not urged below. In his reasons the District Judge states: "Defendant has not supported this position with any argument or authorities and this is also overruled." We will consider this contention regardless of whether it was argued in the lower court or not.
Plaintiff has alleged that he was engaged in doing all the dirt work and grubbing in the construction, reconstruction and resurfacing of a portion of State Route 105 in Jefferson Davis Parish, Louisiana, under a contract with T. L. James and Co. Inc., who in turn had a contract with the Department of Highways of the State of Louisiana, and by general allegation alleged the necessity of highways for the *208 good of the general public and that he was charged under his contract to complete the work which he was required to do within a certain period of time, and that he was also charged with the duty and responsibility of using every reasonable means to insure a continued and uninterrupted use of the highway or any portion upon which he was engaged to work; that T. L. James and Co., Inc. could not continue or complete its work until he, petitioner, had completed his portion of the work on the highway. He further alleged that the defendant did not represent the petitioner's employees and that all of his employees have reported for work each day and at no time has any representative of the Local Union contacted plaintiff, but that notwithstanding that fact, defendants established and maintained picket lines at the work and on the state highway, interfering, delaying the work in progress and more particularly blocking the entrance from the storage and operational yards of plaintiff, and that the picketing is being done in such a way as to confuse and disrupt petitioner's work. It is further shown that the petitioner employs but nine employees and that the union had on the picket line more than 35 pickets, most of whom he believed were not residents nor worked in the Parish of Jefferson Davis, and because of that fact his employees are threatened with physical injury as they have and are continuing to work for petitioner. He further alleged the use of abusive and threatening language and the fact that there was no labor dispute between the petitioner and the defendant labor union, and that unless he obtains the relief sought his loss of performance through interruption or stoppage of the work which was required by his contract was of a kind that was impossible to measure adequately in damage and that he will suffer immediate and irreparable damage.
By way of supplemental petition it was alleged that the further purpose of the picketing and disruption of the petitioner's work was to force him to sign an agreement with the defendant union, and that by virtue of the number of pickets, associates and sympathizers on the picket line his employees were threatened with physical injury; further, that the picketing was illegal and for an illegal purpose. Further, that the pickets were carrying signs which read: "A. J. Hanson does not have an agreement with Local 406". It is alleged that there was no basis for an agreement with Local 406 for the reason that none of petitioner's employees were members of that union nor have any employees of petitioner designated that union as bargaining representative. It is further shown in the supplemental petition that the Union has not even asked the employees of petitioner to join nor has it asked petitioner to make a contract with it and that the obvious and only reasonable purpose of such picketing is to force and coerce the petitioner into some agreement with the union. Petitioner further alleges that he is not willing to and cannot legally take any action which would have the effect of driving his employees to the Union for this would violate LSA-R.S. 23:881 et seq.
Under the above allegations we hold that the petition is sufficient and that the motion to dissolve on the ground of vagueness was correctly overruled.

3.
Defendant's third ground that the jurisdiction of the Court is preempted in a matter of this nature under the provisions of the Labor Management Relations Act of 1947 (N.L.R.B.) was abandoned.

4.
The defendant has evidently abandoned in this court its fourth ground for dissolution set forth in its motion, supra. Under this ground defendant contends that:
"The `Little Norris-LaGuardia Act' of Louisiana, Act 203 of 1934, now R.S. 23:821 et seq., still applies to the issuance of injunctions where a case grows out of a `labor dispute' as defined therein and plaintiff here has failed entirely to comply with the prerequisites of this statute."

*209 5.
The defendant in its brief correctly states that plaintiff apparently brought this action under Act 252 of 1954, LSA-R.S. 23:881 et seq., the so called "Right-to-work Bill", which provides in Section 9, LSA-R.S. 23:886, as follows:
"Any employer, person, firm, association, corporation, labor union or organization injured as a result of any violation or threatened violation of any provision of this Part or threatened with any such violation shall be entitled to injunctive relief in the manner provided by the injunction law of this state applicable to general and civil matters, presently R.S. 13:4061-13:4071, against any and all violators or persons threatening violation."
Defendant urges this court to note that the above Act does not expressly negative the application of the Little Norris-LaGuardia Act, Act 203 of 1934, LSA-R.S. 23:821-23:849. It does not expressly negative the application of Act 203 of 1934, however, the "Right-to-work" Bill is the latest expression of the legislature and is controlling as to injunctive relief under that Act. If there is any conflict between the two Acts, naturally the "Right-to-work" Bill would supercede the conflicting portion of the Little Norris-LaGuardia Act of Louisiana, Act 203 of 1934.
Our Supreme Court has answered the contention now being made by defendant in Douglas Public Service Corporation v. Gaspard, supra, as well as in Godchaux Sugars, Inc., v. Chaisson, supra, in the following language:
"In this court, in oral argument, the defendants renewed their plea of prematurity and exceptions based upon the contention that the plaintiffs failed to follow the procedure set out in R.S. 23:841-23:849 (commonly referred to as the Little LaGuardia Act) prior to seeking injunctive relief.
"In the Douglas Public Service Corp. case we held that the legislative statutes prescribing procedural rules for obtaining needful writs and processes would be upheld so long as they did not violate our basic law, but that such acts, whether procedural or substantive, infringing or trenching upon the constitutional prerogatives of the courts, could not stand. As in that case, it is evident under the facts here that resort to these statutory provisions would, in effect, have closed the doors of the courts to the plaintiffs seeking relief from impending irreparable injury as well as destruction of the private and property rights. Additionally, it would have so hampered the court in granting relief their constitutional guarantee of protection would amount to no protection at all and would, actually, deprive them of their property without due process of law. These exceptions are, therefore without merit."
In the Douglas Public Service case, supra [225 La. 972, 74 So.2d 186], in considering the same proposition the Supreme Court stated:
"In a recent well-considered opinion, the Court of Appeals for the Parish of Orleans pointed out that Congress, under the authority specifically granted it by the Constitution of the United States to create and regulate the jurisdiction and powers of all inferior federal courts, was well within its right to effectively prohibit these courts from issuing injunctions in labor disputes by the enactment of the Norris-La-Guardia Act, 29 U.S.C.A. § 101 et seq., while the power and jurisdiction of the courts of this state flows from constitutional grants and the legislature is powerless to interfere with their prerogatives except as specifically authorized by the constitution, concluding that `The powers granted to the trial judge by the Constitution must take precedence over any provisions of any sort of legislation which runs counter thereto, whether such legislation pertains to capital, labor, or any other subject.' The decision in that caseTwiggs v. Journeymen *210 Barbers, etc., La.App., 58 So.2d 298, 302received the approval of this court when we refused the writs sought for its review with the comment that `The judgment is correct.'
* * * * * *
"The right of a laborer to his hire and to organize for the promotion of better wages and working conditions is, in our opinion, as absolute and essential to the pursuit of happiness as is his right to freedom of speech, religion, and to life and liberty itself, all recognized under our basic law as being among those inalienable rights with which all men are endowed by their Creator. And in order to insure that these rights will be maintained inviolate and fully protected, the courts were created with the unqualified guarantee that `No person shall be deprived of * * * property, except by due process of law', Section 2 of Article I, and that `All courts shall be open, and every person for injury done him in his rights, lands, goods, person or reputation shall have adequate remedy by due process of law and justice administered without denial, partiality or unreasonable delay.' Section 6 of Article I.
"For the courts to function in an orderly manner, and with equal protection to all, the Constitution not having provided otherwise, it became necessary for the legislature to establish the rules and regulations that would govern the procedure to be followed by those seeking this guaranteed protection, including the issuance of all needful writs and processes. Such procedural statutes will be upheld in our courts so long as they do not violate our basic law. However, any act of the legislature, whether procedural or substantive, that infringes or trenches upon the constitutional prerogatives of the courts, cannot stand.
* * * * * *
"It follows that the provisions of the so-called anti-injunction act that seek to limit the jurisdiction of the district courts of this state in the granting of immediate relief, if that is necessary for the protection of rights and property, are illegal and ineffective."
Counsel for defendant attempts to distinguish the Douglas Public Service and Godchaux Sugar cases, however, we interpret the cases as holding unconstitutional that portion of Act 203 of 1934, LSA-R.S. 23:844, which seeks to limit the jurisdiction of district courts in the granting of immediate relief (temporary restraining order) in necessary cases.
It is suggested that our interpretation of the Supreme Court's holding in these cases is erroneous, however, Justice Hawthorne in his dissenting opinion in the Douglas Public Service case, supra, interpreted the Supreme Court's decision as holding unconstitutional the procedural requirements for obtaining immediate relief, viz.: a temporary restraining order. In his dissent he stated:
"* * * The majority opinion holds that the relator was relieved from complying with the provisions of the statute because they are unconstitutional. * * *
"The ground for holding the procedural requirements unconstitutional, * * *."
For the above reasons the District Court properly overruled this ground for dissolution.

6.
The defendants' sixth and seventh grounds in its motion to dissolve, that the petition discloses no right or cause of action and that defendants' activities were protected by the I and XIV Amendments to the Constitution of the United States and Article I of the LSA-Constitution of Louisiana, were referred to the merits and are not argued in defendants' brief in the order set out in the motion and we will, therefore, take up the remaining grounds urged by counsel for defendant in his brief.
*211 Counsel for defendant next urges that Section 4 of Act 252 of 1954, LSA-R.S. 23:883, subd. B is void and unconstitutional on its face.
It is defendants' argument that if any authority exists for the issuance of an injunction against picketing, assembly and other conduct in this case, it must be derived from the above referred to Section and Act which reads:
"Any person, firm, association, corporation, or labor union or organization engaged in lockouts, lay-offs, boycotts, picketing, work stoppages, slowdowns, or other conduct, a purpose or effect of which is to cause, force, persuade or induce any other person, firm, association, corporation or labor union or organization to violate any provision of this Part shall be guilty of illegal conduct contrary to the public policy as stated in this Part."
It is respectfully submitted that the above Section in its entirety is in conflict with our basic law, particularly Article I of the Constitution of Louisiana and amendments Nos. I, XIII, and XIV to the Constitution of the United States.
It is argued that the quoted section is so written that the language and restraints cannot be practicably separated clause by clause and each word is interdependent upon the other, and that when considered as a whole, allows such broad use of the injunctive power as to effectively destroy defendants' constitutional guarantees.
Counsel contends that under Section 4 of the Act that individual strikes may be enjoined and therefore the section purports to authorize the court to require that a person must remain at work and not engage in a work stoppage or slow down and "other conduct * * *" and that no such authority for personal restraint from leaving work has ever been upheld in the history of our nation, and that, therefore, any statute attempting to require that persons remain at work and refrain from engaging in work stoppages, slowdowns, or "other conduct" by mandatory injunctive action is on its face unconstitutional as requiring involuntary servitude. This contention is based upon the provisions of Section 4 of Act 252 of 1934 by which counsel contends that the "Legislature authorizes the Courts to enjoin work stoppages (or strikes) engaged in by any person * * *". (Emphasis added.)
The Act does authorize injunctive relief against any person, firm, association, corporation, labor union or organization engaged in any conduct including lockouts, lay-offs, boycotts, picketing, work stoppages, and slowdowns, when the purpose or effect is to cause, force, persuade or induce any other person, etc., to violate any provision of the Act.
There is no merit in the defendant's contention as the Act clearly does not authorize any court to require an employee to remain at work in the sense of involuntary servitude. It is clear under the terms of the Section in question that any person engaging in any conduct including those specifically named in the Act for the purpose of persuading, inducing or forcing another or others named therein to violate any provisions of the Act would be guilty of illegal conduct contrary to the public policy therein stated and would be subject to the injunctive relief provided by the injunction law applicable to general civil matters.
Counsel for the defendants objects to the quoted section of the act in that it permits a harsh remedy of injunctive relief against "picketing, work stoppages, slow-downs, or other conduct, a purpose or effect of which is to cause, force, persuade or induce any other person, firm, association * * * to violate any provision of this Part". He states that a review of the so-called "right-to-work" laws adopted in sixteen of our sister states indicates that this provision is not found in any of the laws and has not been previously interpreted by any of the various courts of our State. He admits that all of these so called "right-to-work" laws in the seventeen states where they have been adopted basically prohibit contracts of the kind defined in Sections 2 and 3 of Act 252 of 1954 but that none of them contain a replica of the *212 Louisiana Act. The question of the constitutionality of Section 4 is, therefore, presented to this court de novo.
Briefly stated, it is defendant's argument that one seeking injunctive relief against picketing is limited to such relief in cases where the purpose was clearly unlawful and, further, that the Supreme Court of the United States "has endorsed as decisive and persuasive a case holding that if the purpose is lawful, the effect is immaterial." The case referred to is Painters & Paperhangers, Local Union No. 1018, v. Rountree Corp., 194 Va. 148, 72 S.E.2d 402. He then argues that the Section under attack not only applies a "purpose" test but also applies an "effect" test, and that the inclusion of such effect test inseparably interwoven in the Section, clearly voids the entire section.
It is well settled that only that picketing which has as its purpose violation of the policy of a State, in this case as expressed in Act 252 of 1954, LSA-R.S. 23:881 et seq., in other words, picketing for an unlawful purpose, may be enjoined.
In the case of Local Union No. 10, United Ass'n of Journeymen, Plumbers and Steamfitters of United States and Canada of American Federation of Labor, v. Graham, 345 U.S. 192, 73 S.Ct. 585, 589, 97 L.Ed. 946, which involved picketing for the sole purpose of obtaining a closed shop in violation of the then existing Virginia "Right-to-Work" law, the United States Supreme Court through Mr. Justice Burton stated:
"The policy of Virginia which is expressed in its Right to Work Statute is summarized as follows by its highest court:
"`It provides in substance that neither membership nor nonmembership in a labor union shall be made a condition of employment; that a contract limiting employment to union members is against public policy; and that a person denied employment because he is either a member of a union or not a member of a union shall have a right of action for damages.' Finney v. Hawkins, 189 Va. 878, 880, 54 S.E. 2d 872, 874.
"Based upon the findings of the trial court, we have a case in which picketing was undertaken and carried on with at least one of its substantial purposes in conflict with the declared policy of Virginia. The immediate results of the picketing demonstrated its potential effectiveness, unless enjoined, as a practical means of putting pressure on the general contractor to eliminate from further participation all nonunion men or all subcontractors employing nonunion men on the project.
"Assuming the above conclusions to have been established, petitioners still contend that the injunction in this case was inconsistent with the Fourteenth Amendment to the Constitution of the United States. On the reasoning and authority of our recent decisions, we reaffirm our position to the contrary. Building Service [Employees International Union, Local 262] v. Gazzam, 339 U.S. 532, 70 S.Ct. 784, 94 L.Ed. 1045; International Brotherhood of Teamsters, etc., Union v. Hanke, 339 U.S. 470, 70 S.Ct. 773, 94 L.Ed. 995; Hughes v. Superior Court, 339 U.S. 460, 70 S.Ct. 718, 94 L.Ed. 985; Giboney v. Empire Storage [& Ice] Co., 336 U.S. 490, 69 S.Ct. 684, 93 L.Ed. 834; Thomas v. Collins, 323 U.S. 516, 537-538, and 543-544, 65 S.Ct. 315, 325-326, 328-329, 89 L.Ed. 430 (concurring opinion); Bakery and Pastry Drivers [and Helpers] Local [802, etc.] v. Wohl, 315 U.S. 769, 776-777, 62 S.Ct. 816, 819-820, 86 L.Ed. 1178 (concurring opinion); Carpenters [and Joiners] Union [of America, Local No. 213] v. Ritter's Cafe, 315 U.S. 722, 62 S.Ct. 807, 86 L.Ed. 1143; Carlson v. People of State of California, 310 U.S. 106, 60 S.Ct. 746, 84 L.Ed. 1104; Thornhill v. State of Alabama, 310 U.S. 88, 103-104, 60 S.Ct. 736, 744-745, 84 L.Ed. 1093; Senn v. Tile Layers [Protective] Union, 301 *213 U.S. 468, 479-481, 57 S.Ct. 857, 862-863, 81 L.Ed. 1229. See also, International Brotherhood of Electrical Workers [Local 501] v. National Labor Relations Board, 341 U.S. 694, 705, 71 S.Ct. 954, 960, 95 L.Ed. 1299."
In the Godchaux Sugars, Inc. and the South Coast Corporation cases, supra, 78 So.2d 680, while recognizing that picketing cannot be enjoined so long as the means is legal and the purpose sought lawful, our Supreme Court stated:
"The next contention of the defendantsthat they have a right to organize and to exert economic pressure to compel recognition, including publicizing their dispute by picketing the mills manned by organized workers pledged not to strike, and even though the employer and the entire community be irreparably injuredis predicated, primarily, upon the theory that such picketing is the assertion of their right of freedom of speech guaranteed by the federal and state constitution and, as such, cannot be enjoined so long as the means is legal and the purpose sought lawful.
"It is true that the United States Supreme Court has likened picketing to speech, but this sweeping analogy as first enunciated in Thornhill v. State of Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093, has since been greatly refined and restricted. In Hughes v. Superior Court of State of California, 339 U.S. 460, 70 S.Ct. 718, 721, 94 L.Ed. 985, the United States Supreme Court, sanctioning the state court's action in enjoining peaceful picketing to compel proportional racial hiring that subverted and contravened the state's public policy as judicially declared, said: `"(T)he domain of liberty, withdrawn by the Fourteenth Amendment from encroachment by the states," * * * no doubt induces liberty of thought and appropriate means for expressing it. But while picketing is a mode of communication it is inseparably something more and different. Industrial picketing "is more than free speech, since it involves patrol of a particular locality and since the very presence of a picket line may induce action of one kind or another, quite irrespective of the nature of the ideas which are being disseminated." * * Publication in a newspaper, or by distribution of circulars, may convey the same information or make the same charge as do those patrolling a picket line. But the very purpose of a picket line is to exert influences, and it produces consequences, different from other modes of communication. The loyalties and responses evoked and exacted by picket lines are unlike those flowing from appeals by printed work. * * * However general or loose the language of opinions, the specific situations have controlled decision. It has been amply recognized that picketing, not being the equivalent of speech as a matter of fact, is not its inevitable legal equivalent. Picketing is not beyond the control of a State if the manner in which picketing is conducted or the purpose which it seeks to effectuate gives ground for its disallowance. * * * "A state is not required to tolerate in all places and all circumstances even peaceful picketing * * *."'"
Counsel for defendant in his brief states:
"A later case, involving picketing for the sole purpose of obtaining a closed shop in violation of the then existing Virginia `right-to-work' law (this was prior to the 1954 amendment which included a provision similar to Section 4 of Louisiana's Act 252 of 1954), went to the Supreme Court of the United States, Local Union No. 10, [United Ass'n of Journeymen, Plumbers and Steamfitters of United States and Canada of American Federation of Labor] v. Graham, 1953, 345 U.S. 192, 73 S.Ct. 585, 97 L.Ed. 946. As stated in the lower court's opinion in this case at page 15, prior to the commencement of picketing the union requested that all non-union labor on *214 the project be laid off and stated that unless this was done every effort would be made to prevent any union labor employed on the project from continuing work. The Supreme Court there upheld the Virginia `Right-to-work' law. However, the Supreme Court was careful to point out that its decision was limited to an injunction against picketing where the purpose was clearly unlawful to force a contract employing all union labor in violation of the state `right-to-work' law. The Court refers in its opinion to the case of Painters & Paperhangers, Local Union No. 1018, v. Rountree [Corp.], 184 [194] Va. 148, 72 S.E.2d 402, decided by the highest court of Virginia, and specifically states that it found this case helpful in upholding the constitutionality of the `right-to-work' statute of Virginia, thus severely limiting the scope of its own decision to clearly unlawful cases that narrowly met the test of the demands in the Graham case. In the Rountree case (expressly approved by the U. S. Supreme Court), the Virginia Supreme Court found that the picketing was not for an unlawful purpose and dissolved the injunction granted by the lower court, stating:
"`The purpose of the picketing avowed in the answer and in the motion to dissolve was to unionize the non-union painting contractor and his employees. The evidence does not disclose a different purpose. The charge that there was a purpose to compel the complainants to discharge the nonunion painters or to compel the painters to join the union as a condition of their continued employment is not established by the evidence. No such demand or even suggestion was made by the defendants to the complainants, to the contractor or to his men. If the peaceful publication of the facts in an effort to unionize the painters resulted in economic pressure on the complainants as employers of the painters that result did not make the purpose unlawful or the picketing illegal. It cannot be said that picketing otherwise legal becomes illegal because of the possibility that as a result of it a person affected by it may do an unlawful act unless the purpose of the picketing is to compel the doing of such an act.'

"As has been pointed out, the Supreme Court of the United States endorsed and approved this opinion of the Supreme Court of Virginia by stating in the Graham case, that this decision persuaded them to hold the statute of Virginia constitutional. Thus the Supreme Court has endorsed as decisive and persuasive a case holding that if the purpose is lawful, the effect is immaterial."
Counsel for defendant therefore contends that the United States Supreme Court has limited the right to enjoin peaceful picketing in those cases where the purpose was unlawful, that is, in violation of the terms of a state's "right-to-work" statute. Clearly, had the Legislature omitted the word "or effect" contained in Section 4 of Act 252 of 1954, supra, defendant would have no argument. Under Section 12 of said act, commonly referred to as the "saving clause" it is provided that "If any clause, sentence, paragraph, section or part of this Act shall be adjudged by any court of competent jurisdiction to be invalid, such judgment shall not affect, impair, or invalidate the remainder thereof, but shall be confined in its operation to the clause, sentence, paragraph, section or part thereof directly involved in the controversy in which such judgment shall have been rendered." Under this saving clause the words "or effect" might be stricken therefrom if they rendered the Section unconstitutional for they are not necessary nor so inseparably interwoven that they could not be stricken.
Peaceful picketing for a lawful purpose may not be prohibited or enjoined without violating the First and Fourteenth Amendments to the United States Constitution, protecting freedom of speech, press, and assembly, Thornhill v. *215 State of Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093; American Federation of Labor v. Swing, 312 U.S. 321, 61 S.Ct. 568, 85 L.Ed. 855; Cafeteria Employees Union, Local 302 v. Angelos, 320 U.S. 293, 64 S.Ct. 126, 88 L.Ed. 58; Bakery and Pastry Drivers and Helpers, Local 802, etc., v. Wohl, 315 U.S. 769, 62 S.Ct. 816, 86 L.Ed. 1178. Of course, peaceful picketing for an unlawful purpose may be prohibited, Carpenters and Joiners Union of America, Local No. 213 v. Ritter's Cafe, 315 U.S. 722, 62 S.Ct. 807, 86 L.Ed. 1143; Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 69 S.Ct. 684, 93 L.Ed. 834; Local Union No. 10, etc., v. Graham, 345 U.S. 192, 73 S.Ct. 585, 97 L.Ed. 946, not enjoying these constitutional protections.
For these reasons, we hold that the provision of LSA-R.S. 23:883, subd. B, that any person engaging in conduct "a purpose or effect of which is to cause * * * any other person * * * to violate any provision of this Part shall be guilty of illegal conduct" (emphasis added) is unconstitutional insofar as the italicized words "or effect" is concerned. However, especially in view of the saving clause, the invalidity of one portion of the provision does not invalidate the valid portion, the latter being independent of the invalid portion. Conley v. City of Shreveport, 216 La. 78, 43 So.2d 223; Louisiana State Department of Agriculture v. Sibille, 207 La. 877, 22 So.2d 202; Womack v. Varnado, 204 La. 1019, 16 So.2d 825; Ricks v. Department of State Civil Service, 200 La. 341, 8 So.2d 49.
Thus the mere possibility that picketing would have an unlawful effect does not justify its ban unless it has an unlawful purpose. This is not to say, however, that proof of an unlawful effect would not be admissible as confirmatory of an unlawful purpose, together with all the surrounding facts and circumstances.
Counsel further objects to the prohibition against "other conduct a purpose or effect of which is to cause, force, persuade or induce any other person * * *". Defendant urges that it so broadens the prohibition of the Section as to completely invalidate it in that it embraces every conceivable form "of exercise of sacred American rights." They argue that it would prohibit, contrary to Constitutional guarantees (a) "meetings, assemblies, including meetings of the employees themselves to persuade or induce the other employees to join the union," (b) "The distribution of pamphlets or other literature designed to persuade an employer to sign a contract with the union or to persuade his employees to join the union," (c) "or the use of a sound truck to advertise that this is a non-union employer which might have the result or effect of persuading him in some way to violate this law," (d) "radio and newspaper advertisements, pamphlets and other forms of publication." The words, "other conduct," as used in the Section are clearly intended to cover any act in addition to the specific ones enumerated therein by any person, firm, association, corporation or labor union or organization for an unlawful purpose or which bring about an unlawful effect as a result of an unlawful purpose. The "other conduct" intended is limited to an unlawful purpose or effect and as so used does not prohibit such acts as defendant sets forth in (a) (b) (c) and (d).
The next and last contention advanced by defendant is that the injunction issued here permanently after trial of the rule to show cause on the basis of a stipulation that both the preliminary and permanent injunction would be tried together offend the basic constitutional rights of the defendants. This attack upon the judgment of the Court goes to the merits of the case. Authorities have been cited and it is admitted that peaceful picketing for an unlawful purpose, that is, in contravention of the "right-to-work" policy of the State of Louisiana, as contained in Act 252 of 1954, LSA-R.S. 23:881 et seq. can be legally enjoined.
It is therefore necessary in order to determine this question for the court to determine whether the picketing in this case was for an unlawful purpose. By reference to the stipulation of fact, accepting *216 as true the purposes of the picketing as would have been testified to by Fuller, the business agent of the Union, purpose (a) under the settled jurisprudence was not unlawful, neither was purpose (b) nor (c). If the purpose was unlawful it is shown under (d):
"(d) Persuade plaintiff to hire local residents, members of defendant labor organization, at the aforementioned union wage scales."
On the merits the lower court reasoned and held:
"Plaintiff has but three employees who are eligible for membership in the defendant union, all of whom are non-union men who had worked for plaintiff on other jobs, One of defendant's stated purposes in picketing is to persuade plaintiff to employ members of defendant's labor organization, however, defendant has not made any demand on plaintiff.
"Can it be said that a picket line placed for the purpose of persuading an employer to hire members of defendant labor organization violates the public policy of Louisiana which states that `the right of a person or persons to work shall not be denied or abridged on account of membership or non-membership in any labor union * * *'? This question must, in some instances, be answered in the negative, for it is not the public policy of the State of Louisiana, to prohibit all picketing. Only picketing which is for an unlawful purpose is prohibited by the new Statute.
"It certainly is not against our Louisiana law for the Unions to try to get their men employed. In fact, the Right to Work Statute expressly provides that union members cannot be denied the right to work. What is prohibited is the denial of a man's right to work simply because the applicant is or is not a union member.
"Since one of the purposes of defendant's picketing is to persuade plaintiff to employ defendant's members, plaintiff argues that to employ one or more of the union's members would require that plaintiff discharge some of his non-union men who have been working for plaintiff in the past on other jobs and who were brought down to do this work. It is hard to escape the conclusion that, if defendant's announced purpose was achieved, plaintiff would have to discharge at least one of his three non-union employees who are eligible for membership in defendant's union. To do so plaintiff argues would result in plaintiff's discharging a non-union man for the reason that he is not a member of the union. If it be found that the only way that plaintiff could comply with the purpose defendant seeks to accomplish with the picket line, would be to discharge a non-union member and to employ one of defendant's union members, there would be no question but that such would constitute a violation of the act. But does that conclusion follow. The facts are that the Union has not demanded that any of Plaintiff's employees be discharged. In fact, the Union (which does not represent any of plaintiff's employees) made no demand whatever before picketing plaintiff's operations.
"It must be remembered that in this case, when the employer came down to work on this job, he came with a full complement of employees, excepting one employee. In filling this one position (which could not be filled by a member of defendant's local operating engineers), plaintiff did not discriminate between union or non-union labor. In fact, all three of the employees who would be eligible for membership in defendant's union had been with plaintiff on other jobs. Under these circumstances, when defendant states that it is a purpose of his picketing to persuade plaintiff to use union labor, there can be no other conclusion but that he means that plaintiff must discharge one of his *217 non-union members and hire one of the defendant's members.
"Now, if plaintiff had come into the area needing employees and had interviewed many applicants for jobs and had filled some jobs, all with non-union labor, then the union would undoubtedly be justified in and would be commended for establishing a picket line to inform the public about plaintiff's practice. It would also appear that such circumstances would indicate that the employer violated the Right to Work Statute by discriminating against Union members."
"This Court has not concluded that picketing for the purpose of persuading an employer to hire members of defendant's union is per se an unlawful purpose. But under the circumstances of this case, the effect of defendant's picket line is to persuade plaintiff to violate the Statute by persuading him to do something which he could not contract to do, i. e. discharge a non-union man because he is not a member of the union."
Under the facts of this case the plaintiff had all of his jobs filled and it was utterly impossible for him "to hire local residents, members of defendant's labor organization * * *" unless he did one of two things. He had to violate Louisiana's "right-to-work" statute by discharging one or more of his non-union employees which would have subjected him to the force of the law, or hire members of the defendant's labor organization when he had no need for any additional employees.
It is argued by the defendant in their brief that:
"The Supreme Court has been extremely careful in all cases to point out that it must be clearly found by the State court that the purpose of the picketing was unlawful. Here, the purpose of the picketing were stipulated and nowhere was it stipulated or is there anything in the record to show that the purpose of the union in picketing this contractor was either to require him to employ only union men or to require him to discharge non-union men. It is true that it was stipulated that one of the purposes was to require him to employ some union men. This, of course, is permissible. Painters [& Paperhangers, Local] Union [No. 1018] v. Rountree, supra; [Local Union No. 10, United Ass'n of Journeymen] Plumbers [and Steamfitters of United States and Canada of American Federation of Labor] v. Graham, supra. That the effect of the picketing might have brought about the discharge of some non-union men in order for him to employ some union men was clearly answered by the Court of Virginia in this language: (Emphasis added)
"`If the peaceful publication of the facts in an effort to unionize the painters resulted in economic pressure on the complainants, as employers of the painters, that result did not make the purpose unlawful or the picketing illegal. It cannot be said that picketing otherwise legal becomes illegal because of the possibility that as a result of it a person affected by it may do an unlawful act, unless the purpose of the picketing is to compel the doing of such an act.' Painters & Paperhangers, Local Union [No.] 1018 v. Rountree, 194 Va. 148, 72 S.E.2d 402, 405.
approved by the Supreme Court of the United States, Local Union No. 10 [United Ass'n of Journeymen, Plumbers and Steamfitters of United States and Canada of American Federation of Labor] v. Graham, 345 U.S. 192, 73 S.Ct. 585, 97 L.Ed. 947. This principle was ignored by the Court below. The Court was thus applying its own `effect' test, not the approved purpose test * * *."
It is to be noted that counsel states that it was true that it was stipulated that one of the purposes was to require plaintiff *218 to employ "some union men." The express purpose (d) stated: "persuade plaintiff to hire local residents, members of the defendant's labor organization." (Emphasis added.)
The above emphasized statement made by counsel in his brief together with the stated purpose of persuading the plaintiff herein to hire local residents, members of the labor union, where the plaintiff had no open jobs, can lead to but one logical conclusion: that the purpose of the picketing in this case was to persuade plaintiff to hire union men at this time on this particular job, which would be for an unlawful purpose within the intent of the law for it would require the plaintiff to discharge a non-union man or men. In short, we interpret the facts in this case, the stated stipulation, and counsel's argument as shown in his brief, supra, to mean that defendant was picketing plaintiff's job to require plaintiff to hire union men on that job before the picketing would cease with the actual or implied knowledge that in so doing plaintiff would have to fire non-union men or to require them to join the union. The picketing for the stipulated purpose was not a long range proposition for the defendant specifically was picketing to persuade plaintiff to hire local residents. The purpose of the picketing was limited to the particular job, to the conditions existing on the particular job at the time of the picketing and not to conditions that might arise in the future on some other job.
Counsel also takes the position that even though the effect of the picketing might have brought about the discharge of some non-union men in order for plaintiff to hire some union men was clearly answered by the Court of Virginia and the inference was that picketing which brought about such a result could not be enjoined. Applying the facts of this case to the test laid down in the Graham case, supra, and quoted above, the facts of the case at bar reveal that the purpose of the picketing was to compel the discharge of a non-union employee or employees in order that they might be replaced by union men. The very purpose of the picketing in this case was to compel the doing of an unlawful act by the plaintiff.
For the reasons stated the injunction was properly issued.
Defendant next complains of the broad extent of the injunction. It is submitted that without admitting the correctness of the issuance of the injunction that it should have been limited to picketing "which has for its purpose to force the employer to discharge non-union men or to require him to employ only and exclusively union men."
In support of this contention there is cited Milk Wagon Drivers Union, etc., v. Meadowmoor Dairies, Inc., 312 U.S. 287, 61 S.Ct. 552, 556, 85 L.Ed. 836, in which the Supreme Court stated:
"In the exceptional cases warranting restraint upon normally free conduct, the restraint ought to be defined by clear and guarded language. According to the best practice, a judge himself should draw the specific terms of such restraint and not rely on drafts submitted by the parties. But we do not have supervisory power over state practice, provided such practice is not used to evade constitutional guarantees. See Fox River [Paper] Co. v. Railroad Commission, 274 U.S. 651, 655, 47 S.Ct. 669, 670, 71 L.Ed. 1279; Long Sault Development Co. v. Call, 242 U.S. 272, 277, 37 S.Ct. 79, 81, 61 L.Ed. 294."
Also cited and quoted from is the case of Building Service Employees International Union, Local 262 v. Gazzam, 339 U.S. 532, 70 S.Ct. 784, 788, 94 L.Ed. 1045, in which it was stated:
"The Washington statute has not been construed by the Washington courts in this case to prohibit picketing of workers by other workers. The construction of the statute which we are reviewing only prohibits coercion of workers by employers. We cannot agree with petitioners' reading of this injunction that `whatever types of picketing *219 were to be carried out by the union would be in violation of the decree.' Respondent does not contend that picketing per se has been enjoined but only that picketing which has as its purpose violation of the policy of the State. There is no contention that picketing directed at employees for organization purposes would be violative of that policy. The decree does not have that effect.
* * * * * *
"* * * The injunction granted was tailored to prevent a specific violation of an important state law. The decree was limited to the wrong being perpetrated, namely, `an abusive exercise of the right to picket.' Cafeteria Employees Union, Local 302 v. Angelos, 320 U.S. [293] at page 295, 64 S.Ct. [126] at page 127, 88 L.Ed. 58. * * *"
It appears that the District Court in the injunction issued herein has followed the wording of the injunction issued in the Graham case, supra [345 U.S. 192, 73 S.Ct. 591], which caused Mr. Justice Douglas in his dissenting opinion which involved a disagreement on his part from the majority as to the facts shown by the record, and in which he made the following statement:
"* * * We spoke in Thornhill v. State of Alabama, supra, 310 U.S. [88] at page 105, 60 S.Ct. [736] at page 745, 84 L.Ed. 1093, of the importance of a `narrowly drawn' picketing statute, of the danger of one that condemned picketing indiscriminately. The same dangers are inherent in cases where there are no findings and yet where the unlawful purpose must be found before the picketing can be enjoined. If Virginia is to enjoin this form of free speech, I would require her to show precisely the reasons for it. Unless we are meticulous in that regard, great rights will be lost by the absence of findings, by the generality of findings, or by the vagueness of decrees. There is more than suspicion that that has happened here. For the decree permanently enjoins defendants `from carrying on their picketing or other activities in front of or around' the construction site. This decree was not `tailored to prevent a specific violation' of state law. Building Service [Employees International] Union [Local 262] v. Gazzam, supra, 339 U.S. [532] at page 541, 70 S.Ct. [784] at page 789, 94 L.Ed. 1045. It is a broadside against all picketing, the kind of general assault condemned by Thornhill v. State of Alabama, supra. It illustrates the evil consequences that flow from a failure to be utterly painstaking in isolating the precise evils in picketing which the state may regulate."
It will be noted in footnote 3, 73 S.Ct. at page 587 of the Graham case, supra, that "Petitioners now object to the breadth of the terms of the injunction. That objection was not presented in their petition for certiorari and is not considered here." Therefore, the majority opinion clearly did not pass upon the breadth of the injunction, however, Mr. Justice Douglas in his dissenting opinion clearly thought the decree too broad and "not `tailored to prevent a specific violation'" of State law.
We believe that there is merit in defendant's complaint as to the breadth and scope of the injunction decree in this case and that it should be limited to the specific violation of the State law. Of course, this would still allow picketing for the purposes enumerated in (a), (b) and (c) (Stipulation of fact) and even though peaceful, might have the same effect insofar as economic pressure on the plaintiff is concerned.
It might be argued that the practical effect of this decision is to void the injunction. May we again reiterate that it must be remembered that courts are bound by the law and in such a case as the one at bar only such picketing as has for its object an unlawful purpose may be enjoined and such an injunction under the jurisprudence must be "tailored to prevent a specific violation *220 of the State law and cannot be so broad as to prevent all picketing and particularly that which is done for a lawful purpose.
As argued and stated in the plaintiff's brief:
"* * * Thus in the State of Washington, where the Gazzam and Hanke cases arose, the Supreme Court of Washington in Ostroff v. Laundry & Dye Works [Drivers'] Local [No. 566, 39 Wash.2d 693], 237 P.2d 784, the Court found that the unlawful purpose found in the original decision of Ostroff v. Laundry & Dye Works [Drivers] Local [No. 566] (37 Wash. 2d 595, 225 P.2d 419, 19 Labor Cases 66137 (1950) has been removed, although the former employees continued the same type of picketing as before, and allowed further picketing regardless of the effect, after the removal of the unlawful purpose."
It is, therefore, ordered, adjudged and decreed that the motion to dissolve the temporary restraining order issued herein be and the same is denied.
It is further ordered, adjudged and decreed that the exceptions of no cause or right of action filed herein on behalf of the defendant be and the same are overruled.
It is further ordered, adjudged and decreed that there be judgment in favor of the plaintiff and against the defendant perpetually enjoining the defendants and members and associates and all members of said International Union of Operating Engineers, Local No. 406, affiliated with the A. F. of L., from in any manner picketing or maintaining either singularly or collectively, pickets at or about or near petitioner's place of business, including all buildings occupied by petitioner's employees when at work, storage yards, parking lot, and particularly at those areas wherein petitioner is conducting its operation in the Parish of Jefferson Davis and particularly across those areas wherein petitioner must have egress and ingress to and from its lots or material storage dumps to the work which it is performing or from engaging in any other conduct including lockouts, layoffs, boycotts, work stoppages and slowdowns for the purpose of causing, forcing, persuading or inducing plaintiff to discharge any one or all of his presently employed non-union men so that he might employ local residents, members of defendant's labor organization.
It is therefore ordered that the judgment of the District Court as above amended is hereby affirmed.